Dylan D. Routh
C. Renee Manes
4928 SE Tibbetts
Portland, OR 97206
Phone: 503-281-7723
email: dylandrouth@hotmail.com
email: renee.manes@gmail.com
Plaintiffs in *pro se*



# IN THE UNITED STATES DISTRICT COURT

## FOR THE WESTERN DISTRICT OF NEW YORK

### ROCHESTER DIVISION

DYLAN ROUTH and C. RENÉE
MANES,

           Plaintiffs,

v.

UNIVERSITY OF ROCHESTER,
SARAH HULBERT (as staff member
of the University of Rochester), and
SARAH HULBERT (individually),

           Defendants.

11-CV-6606 CJS

**NOTICE OF MOTION AND
MOTION BY PLAINTIFFS
TO FILE A FIRST AMENDED
COMPLAINT**

[Reply Requested; Hearing on Issues
Previously Requested]

Plaintiffs hereby move pursuant to Federal Rule of Civil Procedure 15(a) to file

a First Amended Complaint against the University of Rochester and Sarah Hulbert.

The Defendants have filed motions to dismiss this matter pursuant to

F.R.Civ.P. 12(b)(6), alleging that the pled claims fail to state a claim for which relief

may be granted. Often the compliant is that the claims lack specificity. Plaintiffs

therefore seek leave to file a First Amended Complaint, and in the memorandum in support of this motion demonstrate why the currently pled claims establish a basis for relief under the grounds asserted therein. The proposed First Amended Complaint is provided as Exhibit A herewith.

This motion is supported by the Memorandum of Law which is filed herewith, which is also filed in opposition to the Defendants' motions to dismiss, along with the reply to be filed, any arguments on the motion, and the file in this matter.

Plaintiffs request leave to file a reply in support of this motion, a hearing has previously been requested by the Defendants.

RESPECTFULLY SUBMITTED this March 23, 2012.

Dylan D. Routh

C. Renée Manes

Dylan D. Routh
C. Renée Manes
4928 SE Tibbetts
Portland, OR 97206
Phone: 503-281-7723
email: dylandrouth@hotmail.com
email: renee.manes@fd.org
Plaintiffs in *pro se*

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
ROCHESTER DIVISION

| | |
|---|---|
| DYLAN ROUTH and<br>C. RENÉE MANES,<br><br>Plaintiffs,<br><br>v.<br><br>UNIVERSITY OF ROCHESTER,<br>SARAH HULBERT (as staff member<br>of the University of Rochester), and<br>SARAH HULBERT (individually),<br><br>Defendants. | 11-CV-6606 CJS<br><br>FIRST AMENDED COMPLAINT<br><br>Causes of Action Against the University of<br>Rochester:<br><br>1. Violations Of Title IX<br>2. Breach of Contract<br>3. Article 78 Allegations<br>4. Fraud In Inducement (Material Omission)<br>5. Intentional Infliction of Emotional Distress<br><br>Against Sarah Hulbert Individually for:<br><br>6. Defamation (Libel and Slander)<br>7. Intentional Infliction of Emotional Distress<br>8. Intentional Interference with Existing<br>Contractual Relations |

JURY TRIAL DEMAND

Plaintiffs, Dylan D. Routh and C. Renée Manes, complain and allege as follows:

## I. PARTIES

1.   Plaintiff Dylan Routh is a resident and citizen of the State of Oregon.

2.   Plaintiff C. Renée Manes is a resident and citizen of the State of Oregon.

**FIRST AMENDED COMPLAINT FOR DAMAGES**

3.     Defendant University of Rochester is a corporate entity doing business, and with a primary place of residence, in the State of New York.

4.     Defendant Sarah Hulbert, both while acting in her capacity as a staff member of the University of Rochester and her individual capacity, is a resident of the State of New York.

## II. JURISDICTION, VENUE AND EXHAUSTION

5.     Jurisdiction is appropriate before this court based both on allegations of diversity, in that there is complete diversity among the parties, and based on subject matter jurisdiction.

6.     Jurisdiction is sought based on diversity of the parties pursuant to 28 U.S.C. § 1332; there is complete diversity among the parties and the amount in controversy exceeds $75,000.00.

7.     Jurisdiction is sought based on federal subject matter jurisdiction pursuant to 28 U.S.C. § 1331. This complaint alleges federal causes of action, including discrimination and harassment based on sex/gender by an educational institution receiving federal funds, in violation of Title IX, codified at of 20 U.S.C. § 1681. Additional causes of action assert violations of Plaintiff's constitutionally protected rights under the First and Fourteenth Amendments. Pendant and ancillary jurisdiction is sought for all other causes of action pursuant to 28 U.S.C. § 1367. To the extent jurisdiction is not found for any claims alleged herein, Plaintiffs will proceed on such claims in an appropriate forum, but will continue to assert the remainder of the claims in this forum.

8.     Venue is appropriate in this jurisdiction as the Defendants reside and do business herein and many if not all facts underlying the complaint occurred herein.

9.     To the extent necessary and required by law, Plaintiffs have exhausted all available administrative remedies prior to initiating the current action.

FIRST AMENDED COMPLAINT FOR DAMAGES

## III. FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

10. After ending a two-year consensual sexual relationship with Defendant Sarah Hublert, Dylan Routh was accused by Sarah Hulbert of having sexually assaulted and raped her over the last year. The allegations were false, and unconscionable. When it became undeniable that Sarah Hulbert's allegations were false and malicious, the University of Rochester decided to expel Dylan Routh not because he sexually assaulted Sarah Hulbert, but based on the nature of their private, consensual sexual relationship. Proof of all of the facts alleged in this complaint exist in significant documentation and a record that are in the possession of Defendants. The University of Rochester refuses to allow Plaintiffs access to that record, and are taking every possible action to protect their conduct from any review. Plaintiffs have access to only a limited factual record, and are therefore constrained in the specific statements with which they can plead. Moreover, given the nature of the issues, Plaintiffs previously endeavored to plead no more than absolutely necessary to demonstrate causes of action. In response, the Defendants contend that the Plaintiffs have failed to plead with particularity, or to demonstrate sufficient facts which entitle them to any relief in this matter, while affirmatively misrepresenting the factual record that is in the custody of Defendants. Plaintiffs will therefore plead with as much specificity as possible in this First Amended Complaint and, where available, quote from the documentation available to Plaintiffs. While some of the terminology will be explicit, Plaintiffs do not undertake such filings for the purpose of embarrassment or harassment, but instead to demonstrate that they have viable causes of action. It is not the Plaintiffs who first decided to publicize the nature of the private, consensual sexual contact between Dylan Routh and Sarah Hulbert – it was Sarah Hulbert and the University of Rochester.

FIRST AMENDED COMPLAINT FOR DAMAGES

**A.** **The Two Year Long Consensual Sexual Relationship Between Dylan Routh And Sarah Hulbert While Both Were Students At The University Of Rochester**

11. Starting in September of 2008, Dylan Routh and Sarah Hulbert were enrolled as students at the University of Rochester. At all times relevant to the allegations herein, Dylan Routh was a student at the Defendant, University of Rochester, and there existed between the parties the University and Dylan Routh a contractual relationship based on the published policies, principles, standards and procedures of that Defendant.

12. Dylan Routh is from Portland, Oregon, and had never previously lived on the east coast. Sarah Hulbert is from Rochester, and has deep ties to the University of Rochester. Her father is a Professor at the University of Rochester, her family lives in the area, and she has hundreds of friends and family in the Rochester area, while Mr. Routh knew no other individuals before he arrived on campus.

13. While the two did not start a relationship their freshman year, they did become good friends. In their Sophomore year, the Fall of 2009, they dated monogamously for a brief period, until Sarah Hulbert ended the relationship. Nevertheless, Sarah Hulbert reinitiated a sexual relationship with Dylan Routh that lasted for most of the next two years. Throughout that relationship, Sarah Hulbert was usually the primary actor in deciding when the two would get together. Moreover, because Sarah Hulbert had a single dorm room from the September 2010 through April/May 2011, their sexual activity occurred in that dorm room or in other rooms on campus to which Sarah Hulbert had access based on her status as a Resident Advisor (RA), a staff member of the University. All of the sexual activity that underlay the disciplinary hearings discussed in more detail below occurred between September 2010 and April/May 2011.

14. Some of the sexual activity between Dylan Routh and Sarah Hulbert was more

**FIRST AMENDED COMPLAINT FOR DAMAGES**

experimental in nature. Dylan Routh and Sarah Hulbert frequently discussed the nature of their sexual activities, and decided to adopt practices such as "safe words" which they determined to be "blueberry pancakes." Dylan Routh also found online and utilized a "Consent Form" which he discussed with Sarah Hulbert in January of 2011, and had her sign. The purpose of the consent form was to ensure that the parties had engaged in consensual behavior previously, and that they continued to discuss the nature of their relationship and activities in the future. Sarah Hulbert is already on record acknowledging that she consented to, participated in, and actively sought out their sexual experimentation. In text messages that are in the custody of Defendants, Sarah Hulbert confirms that she found their mutual conduct to be "amazing." Other text messages that are not in the custody of Plaintiffs would document that Sarah Hulbert frequently suggested specific experimental sexual activities. Dylan Routh does have access to one exchange, on Facebook messages, that occurred in November of 2011, during the time period Sarah Hulbert subsequently contended she was the victim of sexual assaults. That series of messages includes the following:[1]

| Date | From | Text |
|------|------|------|
| 11/3/2010 | Hulbert | i did something i think youre really going to enjoy |
| | Routh | like what |
| | Hulbert | i have some games i want to play with you |
| | Routh | great |

---

[1] Again, Plaintiffs apologize for the need to go into graphic detail. Originally the complaint was not pled as explicitly, but the Defendants complain that various averments were not pled sufficiently to demonstrate various causes of action, so the Plaintiffs are pleading with more particularity to demonstrate the validity of their claims.

| Hulbert | hahahha not monopoly. i have stuff i want to use on you |
|---|---|
| Routh | gonna have to do better than that |
| Hulbert | i want to put whipped cream and chocolate syrup all over your dick and lick it off for half an hour. the longer the better. I want to make you cum on my chest and then I want to make you fuck me hard while I'm handcuffed and blindfolded lying on the floor. I want to make you cum and have it be the best you've ever had. I want to try something new while giving you head and I want you to fuck me like a dirty bitch, over and over. you have no idea how much you'll love it. I want you to pound me so hard until you cant go any longer |

At no point in the course of their sexual relationship did Sarah Hulbert ever inform Dylan Routh that she was not consenting to their sexual activity.

15. Over the summer of 2011, while the two were several thousand miles apart, Sarah Hulbert texted Dylan Routh frequently. During one series of text messages, Sarah Hulbert informed Dylan Routh that she had viewed videos of sexual activities involving knives and needles on the internet, that she had masturbated to such videos, and that she desired that Dylan Routh bring needles and knives into their sexual activity when they got together in the fall of 2011, and she also expressed a desire to break into an unused building on campus so that she could be extremely loud in response to their sexual activity. Dylan Routh did not wish to engage in this conduct, and told her so. The transcript of the hearing of September 29, 2011, in the possession of the University of Rochester, contains admissions by Ms. Hulbert that she sent such text messages to Mr. Routh, although she contended that the text messages no longer exist.

16. At all points in time during their relationship, Sarah Hulbert was a rational,

**FIRST AMENDED COMPLAINT FOR DAMAGES**

competent adult, who was not suffering from any mental diseases, defects or disorders. The University of Rochester chose Sarah Hulbert to be a RA during this time based on her "maturity, common sense, programming ideas, and peer counseling skills" and placed her on a hall with incoming freshman, demonstrating their acknowledgment of her intelligence, rationality and competency. The University of Rochester has subsequently employed Sarah Hulbert as a teaching assistant. Sarah Hulbert was both legally and factually capable of understanding the nature of her conduct and consenting to the various sexual activities in which she was engaging with Dylan Routh. Further, Sarah Hulbert was and has been at all times herein fully capable of making her consent, or lack thereof, known to any and every relevant party. The record in the possession of the University of Rochester contains documentation in which Sarah Hulbert confirmed that she was fully aware of what might constitute an abusive relationship, and that she and Dylan Routh were not in an abusive relationship at the time at issue herein. At no time did Dylan Routh have any position of authority or power over Sarah Hulbert; to the contrary, Sarah Hulbert was the primary actor in the relationship and the individual with extensive ties and support in the Rochester and University community.

## B. Dylan Routh's Decision To End The Relationship In September 2011, Followed Immediately By Sarah Hulbert's Retaliation With False Allegations That Dylan Routh Had Raped Her Months Before

17. During September 2011, Dylan Routh decided to end his relationship with Sarah Hulbert, since he had become increasingly reticent to engage in the type of sexual activity that Sarah Hulbert was requesting.

18. Dylan Routh attempted to inform Sarah Hulbert in person that he wished to stop seeing her, but was unable to do so. Instead, Dylan Routh began to ignore her text messages requesting that they get together. In response, over a three day period, Sarah Hulbert sent Dylan

FIRST AMENDED COMPLAINT FOR DAMAGES

Routh an increasingly angry and hostile series of text messages, very late into the night, demanding that Dylan Routh meet with her for the purpose of having sex. The text messages were still present on Mr. Routh's phone at the time of the hearing of September 29, 2011, and the substance of the text messages was admitted at the hearing and confirmed by the testimony of University Security Officers who had read the text messages on the cell phone. That substance is:

| Date | Time | From | Contents |
|------|------|------|----------|
| 9/14 | 10:37 p.m. | Hulbert | When are we taking that car ride? |
| 9/15 | 12:11 a.m. | Hulbert | Don't like that idea anymore? |
| 9/15 | 12:33 a.m. | Hulbert | There doesn't need to be talking. |
| 9/15 | 12:44 a.m. | Hulbert | And I talked to you when you ask. |
| 9/15 | 12:52 a.m. | Hulbert | I just don't get why you are acting like this. |
| 9/16 | 2:46 a.m. | Hulbert | Are you awake? |
| 9/16 | 2:47 a.m. | Routh | I don't want to talk to you. |
| 9/16 | 2:47 a.m. | Hulbert | Why not? |
| 9/16 | 2:50 a.m. | Hulbert | Dylan |
| 9/16 | 2:54 a.m. | Hulbert | I at least get to know why two weeks ago you wanted me to pick you up from the airport, and now you don't want to talk to me. |
| 9/16 | 2:59 a.m. | Hulbert | Fuck you. After everything, and you can't even answer me? Fuck you. Rot in hell. I hate you more than anyone else. |
| 9/16 | 3:18 a.m. | Routh | Done? |

FIRST AMENDED COMPLAINT FOR DAMAGES

| 9/16 | 3:20 a.m. | Hulbert | What the fuck. Dylan seriously. What happened? You're no longer interested? |
| 9/16 | 3:22 a.m. | Dylan | Basically. |

19.    Three days after this series of text messages, on or about September 19, 2011, Sarah Hulbert retaliated against Dylan Routh for refusing to continue a sexual relationship with her by filing a complaint with the University of Rochester contending that Dylan Routh had sexually assaulted and raped her between September 2010 and April/May of 2011.[2] Sarah Hulbert made oral statements to the University alleging sexual assault and rape, on or about September 19, 2011, sometime between September 20 and September 24, 2011, Sarah Hulbert made statements in writing alleging such conduct; and Sarah Hulbert made additional oral statements at the hearing on September 29, 2011.[3] Sarah Hulbert's allegations of non-consensual sexual conduct were graphic, extreme, outrageous, inflammatory, and completely false. Sarah Hulbert further grossly exaggerated the level of any violence that occurred during their consensual sexual conduct, to the point where those allegations become false and misleading as well. Sarah Hulbert knew when she made the statements that she had consented to all of the couple's prior sexual activity at the time that it occurred, and knew that Dylan Routh had never undertaken any sexual activity that was against her consent. The specific written and oral statements made by Sarah Hulbert are in the custody and

---

[2] The original charge stated that the conduct had continued to occur through September of 2011, however the evidence at the disciplinary hearing discussed below documented that there had only been one sexual encounter since Dylan Routh returned to campus in September 2011, and Sarah Hulbert had no complaints about that conduct.

[3] The Plaintiffs have been denied a copy of the written statements, and oral statements made at the hearing of September 29, 2011. Plaintiffs will supplement their allegations when those documents and records are obtained through discovery.

FIRST AMENDED COMPLAINT FOR DAMAGES

control of Defendants.

**C.**     **The University's Initiation Of Disciplinary Proceedings, Including The Refusal To Allow Dylan Routh To Complain Of Sexual Harassment, And The Inadequate Notice Of The Charges**

20.     Based on the false allegations of Sarah Hulbert, the University of Rochester initiated

disciplinary proceedings and suspended Dylan Routh on September 20, 2011. Dylan Routh was

informed that this suspension was based on "reports of physical and sexual assault." Sexual assault

is defined in the University of Rochester policies as follows:

> Sexual misconduct or assault, including any form of unwanted sexual contact. "Unwanted" means against a person's wishes or without consent, including those instances in which the individual is unable to give consent because of unconsciousness, sleep, impairment or intoxication due to alcohol or other drugs.

Nothing in this policy indicates that any form of consensual sexual conduct – whether it involves

bondage, gagging, or other experimental sexual activity, might be deemed to be "unwanted" based

solely on the nature of the conduct.

21.     On the date of his suspension, Dylan Routh was also forced by the University of

Rochester to call Plaintiff C. Renée Manes, and inform her of his suspension and the pending

disciplinary proceedings.

22.     Dylan Routh and C. Renée Manes immediately requested to file a complaint that

Sarah Hulbert was retaliating against him for refusing to have sex with her, and that this constituted

sexual harassment and discrimination. The University had significant evidence that Sarah Hulbert's

allegations were false, including evidence in prior security reports – which are in possession of

Defendants – documenting that Sarah Hulbert was lying about her relationship with Dylan Routh.

Nevertheless, and in spite of repeated requests, the University refused to allow Dylan Routh to make

any complaint against Sarah Hulbert for sexual harassment or discrimination. At the time of the

disciplinary hearings, the University informed Dylan Routh and Renée Manes that the basis for the refusal was because Dylan Routh was no longer a student and did not have standing to bring such a complaint.

23.     Plaintiff Dylan Routh was not provided with written notice of the charges against him until September 22, 2011. At that time, he was informed that he was charged with the following sexually assaultive conduct that:

> on repeated occasions beginning September 2010 and continuing until the present time . . . you had anal and vaginal intercourse with Sarah [Hulbert] without her consent, hit her, burned her, whipped her, strangled her and detained her against her will.

The charges were scheduled for a hearing on September 29, 2011.

24.     In an e-mail dated September 22, 2011, Renée Manes informed Dean Morgan Levy and General Counsel Richard Crummins that this notification failed to comply with the University's requirements for Fundamental Fairness in the Hearing Process, and specifically failed to comply with the following requirements:

1.     All charges must be in writing to the respondent and victim at the time of the notification of the hearing.

2.     Charges shall be reasonably specific as to the nature, time and place of the alleged infraction.

\* \* \*

5.     The respondent and victim shall be afforded at least seven days notice of the hearing in writing.

The Plaintiffs complained that the charging letter failed to provide specific notice of the nature, time and place of the alleged infractions in writing. In an e-mail dated September 23, 2010, the University's General Counsel Crummins admitted that the complaint that the charge letter lacked

the specificity required by the University's policies was "valid." However, to date, the University has failed and refused to provide Dylan Routh with any specific statement in writing of what conduct he undertook on what day that was in violation of the University's prohibition on assault or sexual assault.

25. As a result of the suspension of Dylan Routh and the initiation of disciplinary proceedings, Plaintiff C. Renée Manes traveled to Rochester to be present during the course and scope of the disciplinary hearings.

**D. The Evidence Adduced At The Hearing Establishing The Consensual Nature Of All Sexual Activity, And The Conversion Of The Disciplinary Hearing Into Judging the Nature Of The Private Consensual Sexual Conduct Between Routh And Hulbert**

26. A disciplinary hearing occurred on September, 29, 2011. All evidence adduced at that hearing established that the sexual activity Sarah Hulbert was now complaining about had occurred months previously, between September 2010 and April/May 2011. All evidence further established that Sarah Hulbert was not alleging that all of her sexual activity with Dylan Routh had been non-consensual, but was instead attempting to select specific acts or actions which she now contended were not consensual. All evidence further established that all of the sexual activity between Dylan Routh and Sarah Hulbert was, in fact, consensual at the time they were undertaken. All evidence further established that Sarah Hulbert had explicitly informed Dylan Routh that she was consenting to all of their sexual activity at the time it was undertaken, and that Sarah Hulbert had implicitly informed Dylan Routh she consented to their activity by consistently returning to re-engage in sexual activity with Dylan Routh until he terminated the relationship on September 16, 2011. All evidence further established that Sarah Hulbert had not made any complaints about her sexual activity with Dylan Routh to the University until after Dylan Routh refused to continue to have sex with her any

more.

27.     There was no evidence adduced at the hearing that would have allowed Dylan Routh to be found guilty of the assaults alleged against him, or that he had undertaken any sexual activity with Sarah Hulbert that was against her consent or her will at the time the activity was undertaken.

28.     When it became apparent that all sexual activity between Dylan Routh and Sarah Hulbert was consensual, the hearing panel turned to questioning Dylan Routh about the nature of the private consensual sexual conduct between the two, and how that conduct fit into some unwritten moral code of the University of Rochester. Dylan Routh had not previously been informed that the University contended it had the power and authority to police and judge the private, consensual sexual conduct of two adult students. Nothing in the charging letter sent to Dylan Routh informed him that the University would be judging the character of his private, consensual sexual activity with Sarah Hulbert, or that he should be prepared to defend such allegations at the hearing.

29.     None of the published policies, principles, standards or procedures of the University of Rochester state that the University will police or moderate the private consensual sexual activity of adult students and staff members. The University policies on Fairness state that every student has a "right to, and should expect, fair treatment according to openly-stated and clearly-articulated expectations, policies and procedures[.]" Prior to the disciplinary hearing, Dylan Routh had not seen any openly-stated or clearly-articulated policy or procedure informing him that the University reserved the authority to police or moderate his private, consensual, sexual activity. Moreover, the University policy regarding sexual assault specifically stated that it polices "unwanted" contact, *see* ¶ 20, *supra,* which led Dylan Routh to understand that so long as his private sexual activity was consensual, it was not in violation of any University policy.

**FIRST AMENDED COMPLAINT FOR DAMAGES**

30.     When applying to the University of Rochester, Dylan Routh was not informed that the University of Rochester would police or moderate the consensual sexual activity of adult students and staff members. Had Dylan Routh been informed that the University of Rochester would police or moderate the consensual sexual activity of adult students and staff members, Dylan Routh would not have applied to, nor entered into any contract for schooling with, the University of Rochester.

31.     Between September 2010 and April/May 2011, Sarah Hulbert was a staff member of the University of Rochester, an RA, who had the responsibility for interpreting policies, principles and standards governing student conduct. The Residential Life Staff policy adopted by the University and made available to students such as Dylan Routh define RA's as a "student staff member" and specifically define their staff responsibilities as follows:

> The Resident Advisors (RA s) are upperclass students living on your floor who are trained in various skills, including counseling, advising, programming, resource referrals, and emergency services. The selection of RAs is based on their maturity, common sense, programming ideas, and peer counseling skills. They are on your floor to act as resource persons, to assist in establishing a sense of community, and to interpret University policy and assist in its enforcement.

As a staff member responsible for interpreting and enforcing the University's policy and assisting in its enforcement, if Sarah Hulbert believed that the private, consensual sexual activity that was occurring between herself and Dylan Routh might violate any policy, procedure or standard of the University, she had a duty and an obligation to inform Dylan Routh of that fact. Sarah Hulbert never informed Dylan Routh that any of their private consensual sexual activity might be deemed to be in violation of any policy of the University, or might subject them to discipline. Had Sarah Hulbert informed Dylan Routh that their sexual conduct might be in violation of any policy, procedure or standard, he would have immediately ceased that conduct.

32.     Dylan Routh was unaware that any of his private consensual sexual conduct with

Sarah Hulbert occurring between September 2010 and April/May 2011 might be deemed to be in violation of any Principle of Student Conduct, and Dylan Routh had no intent to violate any such policies, standards or principles.

**E.** **The Expulsion Of Dylan Routh Based On The Nature Of His Private, Consensual Sexual Activity – Without Any Specific Statement Of Any Conduct That Justified Such Expulsion – And The University's Failure To Discipline Sarah Hulbert Either For Her Willing And Active Participation In The Same Sexual Activity, Or For Making False And Retaliatory Allegations Of Sexual Assault Against Dylan Routh**

33.    At the conclusion of the disciplinary proceedings, Dylan Routh was expelled from the University of Rochester based on the nature of the private consensual sexual activity. Dean Morgan Levy explicitly informed Dylan Routh and Renée Manes that Dylan Routh was being expelled based on the nature of his consensual activity with Sarah Hulbert because their mutual conduct violated Principal of Student Conduct 5(a), which states:

> 5.  Disorderly conduct including: (a) fighting, threats, assault, attempted assault, harassment, or other actual or attempted conduct which threatens the health or safety of yourself or another[.]

Nothing in the charging letter dated September 22, 2012, informed Dylan Routh that his private, consensual sexual activity with Sarah Hulbert would be the subject of the disciplinary proceedings.

34.    While Dylan Routh was also informed that he was found to be in violation of Principle of Student Conduct 12, because gagging Sarah Hulbert allegedly precluded her from consenting to further sexual activity, the explicit statement regarding expulsion was that it was based on the violations of Principle 5(a). Notably, Sarah Hulbert confirmed at the disciplinary hearing that she had consented to being gagged, and had only complained when the gag had inadvertently encompassed her hair, and that Sarah Hulbert frequently returned to re-engage in sexual activity with Dylan Routh utilizing gags. Nothing in Principle 12 references gagging as automatically precluding

FIRST AMENDED COMPLAINT FOR DAMAGES

or invalidating consent. Finally, nothing in the charging letter of September 22, 2010, informed Dylan Routh that he was being subjected to a disciplinary hearing based on allegations that he had gagged Sarah Hulbert during sex.

35. To date, the University of Rochester has failed and refused to articulate a single act, on any particular date, undertaken by Dylan Routh that violated any University policy at a level that justified his expulsion.

36. In reaching its conclusion, the University necessarily found that Sarah Hulbert lied when she contended that Dylan Routh had engaged in conduct that was against her consent or will, and had told other lies in the disciplinary process. Specifically, the University is in possession of statements made by Sarah Hulbert in December 2009, which explicitly contradict her allegations of September 2010, and demonstrate that she was lying when she contended that Dylan Routh engaged in conduct that was against her consent or will. Sarah Hulbert's repeated false statements constitute violations of the University's Principle of Student Conduct 1, precluding fraud, or providing false and incomplete information regarding alleged policy infractions.

37. The University of Rochester has a specific Principle on Complicity, which provides that individuals who witness or engage in misconduct but take no action to stop or report such misconduct may also be charged as active participants, which provides:

> The absence of active participation in misconduct is often an insufficient response to violations of the code of conduct. Students are expected to take an active role in disengaging themselves from all acts of misconduct, and are expected to report serious acts of misconduct to appropriate authorities. Failure to do so can be considered acts of complicity, and may result in that student's facing the same charges as active participants.

38. The University has a specific policy precluding discrimination, promising to treat all students equally no matter their sex. Further, the University of Rochester has a policy precluding

FIRST AMENDED COMPLAINT FOR DAMAGES

sexual harassment, which policy precludes retaliatory conduct for a refusal to engage in a sexual relationship.

39.    While Dylan Routh has been expelled for violations of Principle of Student Conduct 5(a) based on the nature of his private consensual sexual activity with Sarah Hulbert, the Plaintiffs are informed and believe and on that basis allege that Sarah Hulbert has not been the subject of any disciplinary action – either for her participation in the same sexual conduct that allegedly justified Dylan Routh's expulsion or for her filing of a false and malicious allegation of sexual assault after Dylan Routh ended his relationship with her – much less subjected to disciplinary action comparable to that to which Dylan Routh has been subjected.

40.    Dylan Routh and C. Renée Manes again requested that they be allowed to lodge a complaint of sexual harassment and discrimination against Sarah Hulbert based on her malicious lies that she had been sexually assaulted, which lies were presented in retaliation for Dylan Routh breaking up with her, and repeatedly sought to raise her other policy infractions. The University refused to allow such a complaint to be filed. In doing so, the University failed in its legal and contractual obligations to Dylan Routh to ensure that he not be subjected to unlawful discrimination and harassment based on his refusal to have sex with another student, and that all students be treated fairly and consistently under the University's policies.

FIRST AMENDED COMPLAINT FOR DAMAGES

## IV. CAUSES OF ACTION

## FIRST CAUSE OF ACTION

## TITLE IX VIOLATIONS: DISCRIMINATION AND

## HARASSMENT ON THE BASIS OF SEX/GENDER

### (Dylan Routh versus University of Rochester)

41.     Plaintiff Dylan Routh incorporates all prior and subsequent paragraphs and for this cause of action alleges specifically as follows. Plaintiff reiterates that proof of all of the facts alleged herein exist in significant documentation and a record that are in the possession of Defendants, and to which Plaintiff has been denied access.

42.     The University of Rochester is an institution of higher learning receiving considerable federal funds, and is therefore subject to the provisions and obligations of Title IX, codified at 20 U.S.C. § 1681, precluding discrimination against any student based on their sex/gender.

43.     The treatment of Dylan Routh by the University of Rochester violated its obligations under Title IX, under each of the following theories.

### A.     Discrimination On The Basis Of Sex/Gender: Erroneous Outcome

44.     Dylan Routh was subjected to disciplinary proceedings based on stale allegations of sexual assault after he ended a two-year long relationship with Sarah Hulbert.

45.     The evidence at the hearing confirmed that Sarah Hulbert had explicitly and implicitly consented to every sexual act that she engaged in with Dylan Routh. The evidence therefore failed to establish that Dylan Routh was guilty of any sexual assault or assault, or any form of unwanted touching, against Sarah Hulbert.

46.     Expelling Dylan Routh when the evidence adduced at the disciplinary hearing failed

to establish any assault or sexual assault constitutes an erroneous outcome and is in violation of Title IX.

## B.    Discrimination On The Basis Of Sex/Gender: Selective Enforcement

47.    The University of Rochester disciplined and expelled Dylan Routh based on the nature of the private, consensual sexual conduct between Dylan Routh and Sarah Hulbert. Sarah Hulbert was an active and willing participant in the private, consensual sexual activity. The University of Rochester was obligated by Title IX to treat Sarah Hulbert and Dylan Routh the same based on their mutual conduct. Subjecting Dylan Routh alone to disciplinary action for conduct that was undertaken jointly by Sarah Hulbert and Dylan Routh constitutes selective enforcement of the University of Rochester's policies, holds only the male partner responsible for the sexual activities of two people, and thereby discriminates against Dylan Routh based on his sex/gender.

48.    The conduct of the hearing clearly indicated a gender bias against Dylan Routh. Dylan Routh was asked, on at least one occasion and possibly more, how his conduct fell within the "moral code" of the University. However, the hearing panel never posed the same questions to Sarah Hulbert. Notably the panel failed and refused to ask Sarah Hulbert how her stated desire to bring knives and needles into the sexual act, and to break into University property for the purpose of undertaking such sexual activity in private, fell within the University's "moral code". The hearing panel failed and refused to ask Sarah Hulbert why she was not equally culpable for their consensual sexual acts as Dylan Routh. Throughout the hearing the panel clearly held Dylan Routh – and Dylan Routh alone – responsible for the private, consensual sexual acts of the parties on the basis of the fact that he was the male, and that Sarah Hulbert was the female.

49.    Dylan Routh sought to file a complaint against Sarah Hulbert because her allegations

FIRST AMENDED COMPLAINT FOR DAMAGES

against him were based on his refusal to engage in a sexual relationship with her, and constituted sexual harassment and discrimination. The University of Rochester refused to allow Dylan Routh to pursue such a complaint, and refused to investigate these issues. The University of Rochester's conduct failed to allow Dylan Routh equal access to the protections afforded by Title IX, selectively enforcing those protections only for the female student, and thereby discriminated against Dylan Routh based on his sex/gender.

## C.     Discrimination And Harassment On The Basis Of Sex/Gender: Deliberate Indifference And Refusal To Investigate

50.     The University of Rochester was informed that Sarah Hulbert's allegations of non-consensual sexual activity were stale, based on conduct that had occurred months before, were retaliatory based on Dylan Routh's recent break-up with her, and were false. The University of Rochester had ample evidence that Sarah Hulbert lied about her allegations against Dylan Routh, and lied when she contended that Dylan Routh engaged in any sexual conduct with her that was against her will and/or without her consent.

51.     Dylan Routh repeatedly attempted to file a complaint with the University of Rochester regarding Sarah Hulbet's retaliation against him for refusing to have sex with her, and repeatedly sought to have this sexual discrimination and harassment investigated. The University of Rochester failed and refused to undertake any corrective action, and allowed Sarah Hulbert to retaliate against Dylan Routh for his refusal to have sex with him.

52.     The University of Rochester's conduct discriminated against Dylan Routh by failing to allow him access to the mechanisms and procedures designed to protect him from the sexual discrimination and harassment of other students, such as Sarah Hulbert. The University failed to fulfill its obligation under Title IX to protect all students, not simply female students but male

FIRST AMENDED COMPLAINT FOR DAMAGES

students as well, from unlawful sexual discrimination and harassment.

**D.    Discrimination On The Basis Of Sex/Gender: Archaic Assumptions**

53.    The University of Rochester undertook disciplinary action against Dylan Routh based on the nature of his private, consensual sexual relationship with Sarah Hulbert. Sarah Hulbert was an active and willing participant in the private, consensual sexual activity. The University of Rochester was obligated by Title IX to treat Sarah Hulbert and Dylan Routh the same based on their mutual conduct. Subjecting Dylan Routh alone to disciplinary action for conduct that was undertaken jointly by Sarah Hulbert and Dylan Routh was based on archaic assumptions by the University of Rochester, clearly articulated by panel members at the hearing. Those archaic assumptions include that a male is the more responsible and culpable party in the sexual decisions between consenting adults, and that the female needs to be protected from her sexual decisions and choices because she is not as capable or as responsible as the male partner. Subjecting Dylan Routh to disciplinary conduct based on such archaic assumptions regarding gender roles and responsibilities constitutes unlawful discrimination in violation of Title IX.

**E.    Pattern And Practice Of Discrimination Against Male Students**

54.    Dylan Routh is informed and believes and on that basis alleges that the University of Rochester has a pattern and practice of selectively enforcing its disciplinary code for sexual discrimination and harassment against male students. Dylan Routh is informed and believes and on that basis alleges that any allegations of sexual assault made by female students result in the immediate suspension of the male student, and that the University fails to allow a full and fair hearing on such allegations, and instead habitually decides to discipline, including through expulsion, the male student regardless of the truth or veracity of the female student's claims and

allegations. Dylan Routh is further informed and believes and on that basis alleges that the University fails to adequately protect its male students from sexual harassment and discrimination from female students. Such a pattern and practice violates the University's obligations to treat all students equally without regard to their sex or gender, and violates Title IX.

## F.    Preservation Of Additional Causes Of Action Discerned In Discovery

55.    Plaintiff reserves the right to supplement these allegations as additional facts are developed through the discovery process.

56.    The conduct alleged herein is the proximate cause of significant damages to Dylan Routh, and he seeks recovery of all actual and compensatory losses, along with an award of damages for emotional distress. Plaintiff further asserts that treble and/or punitive damages are available and appropriate under this cause of action.

## SECOND CAUSE OF ACTION

## BREACH OF CONTRACT

## (Dylan Routh versus University of Rochester and Sarah Hulbert as a Staff Member)

57.    Plaintiff Dylan Routh incorporates all prior and subsequent paragraphs and for this cause of action alleges specifically as follows. Plaintiff reiterates that proof of all of the facts alleged herein exist in significant documentation and a record that are in the possession of Defendants, and to which Plaintiff has been denied access.

58.    There existed between Plaintiff Dylan Routh and the University of Rochester, including staff member Sarah Hulbert, a contract. The terms of the contract are expressed in the policies, principles, standards and procedures published by the University of Rochester. The

FIRST AMENDED COMPLAINT FOR DAMAGES

expected benefit to Dylan Routh from the contract was the ability to undertake course work and complete an undergraduate degree at the University of Rochester. The expected benefit to the University of Rochester was the payment of tuition and associated fees by Dylan Routh and others, including plaintiff C. Renée Manes, on his behalf.

59.     Up through the conduct of the University of Rochester described herein, Dylan Routh had performed or substantially performed all of his obligations to the University of Rochester, and remained willing and able to do so.

60.     The University of Rochester and its staff member, Sarah Hulbert, breached the terms of that contract for reasons including, but not necessarily limited to the following.

## A.     Failing To Inform Dylan Routh Of The Nature And Manner Of Sexual Conduct That Would Violate The University Of Rochester's Policies

61.     The University of Rochester has a policy on Fairness guaranteeing that Dylan Routh has the "right to, and should expect, fair treatment according to openly-stated and clearly-articulated expectations, policies and procedures[.]"

62.     Prior to the disciplinary proceedings against Dylan Routh, Dylan Routh was unaware that there was any policy, procedure or expectation that governed his private, consensual, sexual activities with another adult student. Dylan Routh has never previously been provided any information – either orally or in writing – regarding what types of sexual activity may be deemed to violate any University policy, procedure or expectation. To date Dylan Routh has not been provided with any explicit statement of what private, consensual sexual conduct between two adults violates the University's policies such that it subjects an individual to disciplinary action.

63.     During the entire time period of their experimental sexual activity, Sarah Hulbert was a staff member, specifically an RA, who had the duty and obligation to assist students by interpreting

and explaining the disciplinary policies and procedures of the University. The Resident Advisor policy states that RA's are staff members of the University who's duties include assisting students with the interpretation and enforcement of University principles and policies. Dylan Routh was aware that Sarah Hulbert was a staff member with these duties. Dylan Routh was entitled to expect, and did expect, that Sarah Hulbert would inform him if she believed any of their private, consensual sexual activity was in violation of any University policy or procedure. Sarah Hulbert never provided any such information to Dylan Routh, which reasonably led him to believe that their private, consensual sexual conduct was not violating any policies of the University.

64.     Dylan Routh is informed and believes and on that basis alleges that the University did not have, prior to his disciplinary hearings, any written policy, standard or procedure that would place him on notice, as required by its contractual obligations, of what consensual sexual activity between adult students would be deemed to be in violation of any policy, procedure or standard of the University.

65.     The University of Rochester failed to provide openly-stated and clear-articulated information to Dylan Routh regarding the nature of any private, consensual sexual activity that would be deemed to be in violation of the University's policies, procedures and expectations such that it would subject him to disciplinary action. This failure breached the University's guarantee of Fairness, and accordingly breached the contract between the parties.

## B.     Failing To Protect Dylan Routh From Sexual Harassment And Retaliation By Another Student

66.     The University of Rochester has a policy precluding sexual harassment, which states in pertinent part that:

The University is committed to preventing unlawful discrimination, harassment and

FIRST AMENDED COMPLAINT FOR DAMAGES

retaliation. Upon learning that such conduct has occurred, the University will take the necessary corrective action to prevent such conduct from reoccurring in the future.

67.     The University of Rochester had significant evidence documenting that Sarah Hulbert's allegations of sexual assault made against Dylan Routh were false and made in retaliation for his recent break-up with her and constituted sexual harassment and discrimination. The University also had significant evidence that Sarah Hulbert had committed violations of Principle of Student Conduct 1, precluding fraud, because she provided false and incomplete information regarding alleged policy infractions, such as completely contradictory and inconsistent statements regarding her allegations against Dylan Routh. The University owed Dylan Routh a duty under its policies to investigate these issues, and to discipline Sarah Hulbert if it found that her conduct was in violation of any University policy, including if it was retaliatory and harassing.

68.     Dylan Routh repeatedly requested that the University investigate these issues and protect Dylan Routh from Sarah Hulbert. The University failed and refused to comply with its promise to do so, and thereby breached its contract with Dylan Routh.

## C.     Failing To Provide Information About The Alleged Misconduct Before The Disciplinary Hearing, And Subjecting Dylan Routh To Discipline Based On Allegations Not Included In The Notice Of Hearing And Not In Violation Of Any Written Policy

69.     The University of Rochester's guarantee of Fundamental Fairness in the Hearing Process for disciplinary hearings guarantees that Dylan Routh was entitled to minimal due process including, at the least, that:

> 1.     All charges must be in writing to the respondent and victim at the time of the notification of the hearing.
>
> 2.     Charges shall be reasonably specific as to the nature, time and place of the alleged infraction.

     5.     The respondent and victim shall be afforded at least seven days notice
of the hearing in writing.

70.     The written notice provided to Dylan Routh on September 22, 2011, informed him
that he was charged with the following sexually assaultive conduct, that:

> on repeated occasions beginning September 2010 and continuing until the present
> time . . . you had anal and vaginal intercourse with Sarah [Hulbert] without her
> consent, hit her, burned her, whipped her, strangled her and detained her against her
> will.

71.     General Counsel Richard Crummins admitted in an e-mail dated September 23, 2011,
that the notification letter failed to adequately provide the written notice required by the University's
policies. To date the University has failed to provide Dylan Routh with a written statement of the
charges against him that complies with its guarantee of due process and fundamental fairness.

72.     The evidence adduced at the disciplinary hearing failed to substantiate the charges
alleged against Dylan Routh, because all of the evidence confirmed that the sexual activities between
Dylan Routh and Sarah Hulbert had been fully consensual, that Sarah Hulbert had always consented
to the sexual conduct, and that Dylan Routh never subjected her to any sexual activity that was
against her will.

73.     The University nevertheless determined to discipline Dylan Routh, and expel him,
not because he sexually assaulted Sarah Hulbert, but based on the nature of the private consensual
sexual conduct between the two. Nothing in the notice of hearing informed Dylan Routh that he was
going to be subjected to discipline based on private consensual sexual activity, or that he would be
expected to defend his private consensual sexual activity with Sarah Hulbert. Nothing in the written
policies of the University of Rochester provided guidance on what private, consensual, sexual

conduct might be deemed to be in violation of any University policy such that it would subject a student to disciplinary proceedings, much less expulsion.

74.     The failure of the University of Rochester to provide Dylan Routh with adequate notice of the charges he faced, and the decision to discipline Dylan Routh based on conduct that was not alleged in the written notice of hearing, violated the policies for Fundamental Fairness in disciplinary proceedings, and thereby breached the contract between Dylan Routh and the University of Rochester. Furthermore, the expulsion of Dylan Routh for conduct which is not clearly defined as in violation of any policy or procedure of the University violates the policies of the University including the policy on Fairness and Fundamental Fairness in the disciplinary proceedings, and thereby also breached the contract between the parties.

## D.     Failing To Treat Dylan Routh Equally, And Subjecting Dylan Routh To Differing Standards Of Behavior Based On His Gender, Which Is Male

75.     In addition to Title IX, the University of Rochester has policies precluding different treatment based on issues such as sex and gender. The University guarantees that it has a:

[C]ommitment to nondiscrimination, equal opportunity, and affirmative action in admissions, employment, access to and treatment in University programs and activities, in accordance with federal, state, and local laws and regulations.

\* \* \*

To help establish and perpetuate an inclusive and open environment, all members of the University community are expected to support the University's Equal Opportunity Statement:

The University of Rochester values diversity and is committed to equal opportunity for persons regardless of age, color, disability, ethnicity, gender identity or expression, genetic information, marital status, military/veteran status, national origin, race, religion/creed, sex, sexual orientation, or any other status protected by law. Further, the University complies with all applicable non-discrimination laws in the administration of its policies, admissions, employment, and access to and treatment in University programs

and activities.

76. The University failed to provide Dylan Routh with equal treatment in accordance with its policies, as discussed in the First Cause of Action and incorporated herein. Instead, the University subjected Dylan Routh to extremely harsh sanctions for his participation in private consensual sexual conduct, while wholly absolving Sarah Hulbert of any responsibility for her actions.

77. The discriminatory treatment of Dylan Routh by the University of Rochester violated the University's policies, and thus breached the terms of the contract with Dylan Routh, by violating polices of the University including but not necessarily limited to the general Principles on Fairness, Freedom, Honesty, Inclusion and Respect; the Principle on Complicity; the Principle of Student Conduct No. 1 which precludes fraud; Principle of Student Conduct No. 11 which precludes discrimination and/or harassment based on sex/gender.

## E.  Breaching The Covenant Of Good Faith And Fair Dealing

78. The contract that existed between Plaintiff Dylan Routh and the University of Rochester, including staff member Sarah Hulbert, included an implied covenant of good faith and fair dealing. The conduct of the University of Rochester and Sarah Hulbert as delineated herein breached the covenant of good faith and fair dealing by: failing to fully inform Dylan Routh of his obligations under the contract; participating actively in conduct allegedly breaching that contract without informing Dylan Routh of that fact; preventing Dylan Routh from continuing to perform his obligations under the terms of the contract; and precluding Dylan Routh from enjoying the benefit of that contract.

## F. Preservation Of Additional Causes Of Action Discerned In Discovery

79. Plaintiff reserves the right to supplement these allegations as additional facts are developed through the discovery process.

80. The breach of contract alleged herein is the proximate cause of significant damages to Dylan Routh, and he seeks recovery of all actual and compensatory losses.


### THIRD CAUSE OF ACTION

### ARTICLE 78 ALLEGATIONS

### (Dylan Routh versus University of Rochester)

81. Plaintiff Dylan Routh incorporates all prior and subsequent paragraphs and for this cause of action alleges specifically as follows. Plaintiff reiterates that proof of all of the facts alleged herein exist in significant documentation and a record that are in the possession of Defendants, and to which Plaintiff has been denied access.

82. Plaintiff Dylan Routh presents the following causes of action under Article 78 regarding the disciplinary hearings and the subsequent expulsion of Dylan Routh based thereon pursuant to the provisions of Article 78.

83. The disciplinary proceedings of the University of Rochester and the subsequent expulsion of Dylan Routh based thereon were in violation of the required policies and procedures for those proceedings because the University of Rochester failed and refused to provide Dylan Routh with a written notice of the charges specifically stating the nature, time, and place of the alleged infraction, and to provide such a statement at least seven days before the hearing, as required by the University's polices set forth *supra*.

FIRST AMENDED COMPLAINT FOR DAMAGES

84. The disciplinary proceedings of the University of Rochester and the subsequent expulsion of Dylan Routh based thereon were arbitrary and capricious, and an abuse of discretion, for reasons including that the University informed Dylan Routh that he was being charged with the sexual assault of Sarah Hulbert, which required proof that Sarah Hulbert did not consent to the sexual conduct in which they engaged. However all evidence adduced at the hearing confirmed that Sarah Hulbert had explicitly and implicitly consented to the sexual activity at the time it was undertaken. Furthermore, the evidence established that Sarah Hulbert's complaints concerned conduct that had occurred months before, and that Sarah Hulbert had made absolutely no complaints to the University regarding Dylan Routh until three days after he broke up with her. Thus, the evidence established that Dylan Routh was innocent of any charges of assault or sexual assault.

85. The disciplinary proceedings of the University of Rochester and the subsequent expulsion of Dylan Routh based thereon were arbitrary and capricious, and an abuse of discretion, for reasons including that Dylan Routh was not disciplined and expelled based on the allegations of sexual assault, but instead based on the nature of the private, consensual sexual activity that he and Sarah Hulbert engaged in. However, the University's notice of hearing and charges did not include any allegation regarding the private, consensual sexual activity of the Dylan Routh and Sarah Hulbert, and he was therefore denied notice or the opportunity to defend such charges.

86. The disciplinary proceedings of the University of Rochester and the subsequent expulsion of Dylan Routh based thereon were arbitrary and capricious, and an abuse of discretion, for reasons including that both Dylan Routh and Sarah Hulbert engaged in the same private, consensual sexual activity, but the University undertook no disciplinary action against Sarah Hulbert.

87. The disciplinary proceedings of the University of Rochester and the subsequent

FIRST AMENDED COMPLAINT FOR DAMAGES

expulsion of Dylan Routh based thereon were arbitrary and capricious, and an abuse of discretion, for reasons including that the University refused to allow Dylan Routh to file a complaint of sexual harassment and discrimination against Sarah Hulbert, or to consider those issues.

88.     The disciplinary proceedings of the University of Rochester and the subsequent expulsion of Dylan Routh based thereon were arbitrary and capricious, and an abuse of discretion, for reasons including that the disciplinary proceedings were judging the nature of the private consensual sexual conduct of two adults, one of whom was a student and one of whom was a staff member. The policies, principles, standards and procedures fail to place any student on notice that their consensual sexual conduct may be subject to disciplinary proceedings and may cause expulsion, and there is no delineation provided by the University of Rochester of precisely what consensual sexual conduct would subject any student to discipline. Any determination that consensual sexual conduct violates any principle of the University of Rochester would therefore not be based on any established policies and procedures but on the arbitrary and capricious judgment of whatever particular staff member reviewed the allegations. This is particularly apparent in this matter, because Dylan Routh was explicitly informed and implicitly led to believe by staff member Sarah Hulbert that their mutually consensual sexual conduct did not violate any policy, principle or standards of the University of Rochester, yet other staff members subsequently deemed their mutual conduct to violate those same principles.

89.     The disciplinary proceedings of the University of Rochester and the subsequent expulsion of Dylan Routh based thereon were arbitrary and capricious, and an abuse of discretion, for reasons including that the University of Rochester, through its staff member, Sarah Hulbert, had explicitly and implicitly informed Dylan Routh throughout the course of their consensual sexual

conduct that they were not in violation of any policies, standards or principles of the University. Allowing other staff members to *ex post facto* revisit the issue more than six months after the conclusion of any such activity was arbitrary, capricious, and an abuse of discretion. This arbitrariness and capriciousness is exacerbated by the fact that the University failed and refused to conduct any investigation into its staff member's involvement, participation, inducement and encouragements of these activities.

90.     The disciplinary proceedings of the University of Rochester and the subsequent expulsion of Dylan Routh based thereon were arbitrary and capricious, and an abuse of discretion, for reasons including that Dylan Routh is informed and believes and on that basis alleges that the University has never previously sought to discipline any adult student based on the nature of their consensual sexual conduct with another adult student or staff member, and has never previously alleged that any consensual sexual conduct could be in violation of the policies or principles of the University of Rochester sufficient to subject a student to discipline and expulsion.

91.     The disciplinary proceedings of the University of Rochester and the subsequent expulsion of Dylan Routh based thereon were arbitrary and capricious, and an abuse of discretion, for reasons including that to the extent that the University of Rochester contends it is entitled to moderate and police the nature of the consensual sexual conduct of two adults, the University is obligated by its own policies and procedures to treat both adults equally. The failure to undertake disciplinary proceedings against both individuals and impose equal discipline violates the principles and standards of the University of Rochester including but not necessarily limited to the general Principles on Fairness, Freedom, Honesty, Inclusion and Respect; the Principle on Complicity; the Principle of Student Conduct No. 1 which precludes fraud; Principle of Student Conduct No. 11

which precludes discrimination and/or harassment based on sex/gender.

92.     The disciplinary proceedings of the University of Rochester and the subsequent expulsion of Dylan Routh based thereon were arbitrary and capricious, and an abuse of discretion, for reasons including that the proceedings were initiated by Sarah Hulbert in retaliation for Dylan Routh's refusal to continue to have sexual relations with her, and therefore constituted sexual harassment.

93.     The disciplinary proceedings of the University of Rochester were in excess of the jurisdiction of the University in that the proceedings sought to police and moderate the private consensual sexual conduct of two adults, one of whom was a student and one of whom was a staff member. Policing such consensual sexual conduct is beyond any legal or contractual right of the University.

94.     The expulsion of Dylan Routh by the University of Rochester was in excess of the jurisdiction of the University in that the expulsion was based on the nature of the consensual sexual conduct between two adults, one of whom was a student and one of whom was a staff member. Disciplining an adult based on their participation in private consensual sexual activity is beyond any legal or contractual right of the University.

95.     Plaintiff reserves the right to supplement these allegations as additional facts are developed through the discovery process.

96.     The conduct alleged herein is the proximate cause of significant damages to Dylan Routh, and he seeks recovery of all actual and compensatory losses, along with injunctive relief.

**FIRST AMENDED COMPLAINT FOR DAMAGES**

## FOURTH CAUSE OF ACTION

## FRAUD IN INDUCEMENT (MATERIAL OMISSION)

### (Dylan Routh versus University of Rochester)

97.     Plaintiff Dylan Routh incorporates all prior and subsequent paragraphs and for this cause of action alleges specifically as follows. Plaintiff reiterates that proof of all of the facts alleged herein exist in significant documentation and a record that are in the possession of Defendants, and to which Plaintiff has been denied access.

98.     The University of Rochester defrauded Dylan Routh by materially omitting critical facts while inducing Dylan Routh to enter into a contract with the University and become a student thereof.

99.     Dylan Routh was aware that numerous Universities adopt "morals" provisions that govern the private consensual sexual activity of adult students. Such universities, including Brigham Young University, publicize honor codes requiring students to agree to conditions such as "live a chaste and virtuous life," "use clean language," and "abstain from alcoholic beverages, tobacco, tea, coffee, and substance abuse[.]" Numerous religious universities also impose morals clauses on their students. Dylan Routh was aware that certain universities elect to police private consensual sexual activity, and chose not to apply to such universities.

100.    The University provided considerable information to Dylan Routh in the application process, including written copies of the student code of conduct, along with the policies and procedures of the University. Dylan Routh also traveled to the campus of the University of Rochester, interviewed with a Dean, met with several students and took a tour of the campus. Dylan Routh asked numerous questions, including about disciplinary issues such as the University's

policies on drinking, *etc.*, about the social life on campus, and about the University's expectations of its students. Answers to all of these questions were important to Dylan Routh's decision to enroll at the University of Rochester.

101. At no point in time was Dylan Routh informed that the University of Rochester had adopted any "morality clause," or that the University believed it was allowed to police and moderate the private, consensual sexual conduct between two adult students. Nothing in the written policies, standards or procedures of the University of Rochester that Dylan Routh received in the application or admission process put Dylan Routh on notice that the University reserved the right to police and moderate the private consensual sexual activity of adult students and/or staff members through its Principles of Student Conduct. Nothing that was stated by any Dean or other faculty member ever informed Dylan Routh that the University reserved the right to police and moderate the private, consensual sexual conduct of adult students.

102. To the extent the University of Rochester wished to align itself with those universities electing to enforce a morals clause as part of their policies and procedures, the University had a duty to disclose that information to applicants and students. The existence of such a morals clause is a material issue for students, and was a material issue for Dylan Routh. The University is in a position of superior knowledge on this issue because the University has the unlimited authority to determine what policies and procedures it will adopt, and what conduct may be deemed in violation thereof. The University is further in a position of superior authority because it not only defines the policies and procedures that govern the contract between the parties, but it is also the enforcing body for those policies. The University's superior position of power and authority obligates the University to fully inform students that it reserves the right to find that the nature of their private, consensual

FIRST AMENDED COMPLAINT FOR DAMAGES

sexual conduct between adult students is a serious disciplinary issue such that it would result in their expulsion. Given the University's superior knowledge and position of authority, the failure of the University to inform students of such critical facts during the application process renders that process inherently unfair.

103. Dylan Routh relied on the representations in the policies and procedures of the University, and specifically relied on the lack of any morals clause or other representations or indications that the University would enforce some code of conduct governing private consensual sexual conduct of adult students. Dylan Routh also relied on the explicit representation in the sexual assault policy, which stated that the only form of sexual conduct that was prohibited was "unwanted" conduct. And Dylan Routh relied on the explicit representation in the University's policy on "Fairness" which guaranteed him that the University's policies and expectations of its students, including of their behavior, would be "openly-stated" and "clearly-articulated." All of these explicit statements, accompanied by the omission of any "morals" clause, reasonably led Dylan Routh to believe that the University had not adopted any "morals" clause and therefore was not one of those universities that would police and moderate the private, consensual sexual conduct of adult students.

104. Had Dylan Routh been informed that the University reserved the right to find that the nature of private consensual sexual acts between adult students was a serious disciplinary issue that could justify expulsion, Dylan Routh would never have applied to the University nor entered into any contract with the University of Rochester.

105. Dylan Routh is informed and believes and on that basis alleges that the misrepresentations and material omissions by the University of Rochester alleged herein were intentional, because the University knows that the existence of such a "morals" clause is a material

**FIRST AMENDED COMPLAINT FOR DAMAGES**

consideration for students when applying to colleges and universities, and that numerous students such as Dylan Routh would chose not to apply or attend the University of Rochester if they were informed that the University would seek to police and moderate the nature of consensual sexual acts between adult students.

106. In the event the misrepresentations and material omissions of the University of Rochester delineated herein were not intentional, the omissions were negligent because the University of Rochester had an absolute duty to inform Dylan Routh and other applicants and students if it intended to moderate and police the private consensual sexual conduct between adult students and/or staff members. It is reasonably foreseeable that applicants to the University of Rochester such as Dylan Routh would consider this an important fact in deciding whether to enter into a contract with the University.

107. Dylan Routh has subsequently been disciplined and expelled based on the University of Rochester's decision to police and moderate the nature of his private consensual sexual activities with another student who was, at all relevant times, fully consenting to the conduct and was not only an intelligent, rational and competent adult but also a staff member of the University of Rochester. Dylan Routh has therefore been directly damaged and harmed by the misrepresentations, including material omissions, of the University of Rochester.

108. Plaintiff reserves the right to supplement these allegations as additional facts are developed through the discovery process.

109. The fraud alleged herein is the proximate cause of significant damages to Dylan Routh, and he seeks recovery of all actual and compensatory losses, along with an award of damages for emotional distress. Plaintiff further asserts that treble and/or punitive damages are available and

FIRST AMENDED COMPLAINT FOR DAMAGES

appropriate under this cause of action.

## FIFTH CAUSE OF ACTION

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

### (Dylan Routh and C. Renée Manes versus University of Rochester)

110.    Plaintiff Dylan Routh incorporates all prior and subsequent paragraphs and for this cause of action alleges specifically as follows. Plaintiff reiterates that proof of all of the facts alleged herein exist in significant documentation and a record that are in the possession of Defendants, and to which Plaintiff has been denied access.

111.    The conduct of University of Rochester described herein was intentional or reckless and extreme and outrageous. The University's absolute failure and refusal to allow Dylan Routh access to the protections afforded by law under Title IX and the University's own policies prohibiting sexual harassment and discrimination is without any conceivable excuse. The evidence before the University established not only a prima facie case that Sarah Hulbert's complaint was retaliatory and harassing, but proved that harassment under the preponderance of the evidence standard. Further, punishing Dylan Routh in any manner for private consensual sexual conduct that was sought out by Sarah Hulbert, without undertaking any disciplinary action against Sarah Hulbert, is completely inconsistent with the guarantees of fairness and impartiality to which the University's policies give lip service. The University's mere contention that it had the power and authority to review and judge the private, consensual sexual conduct of two competent, rational adults, is beyond the bounds of decency. Requiring Dylan Routh to justify his conduct – and then to judge his conduct alone – based on some unspoken and unwritten policy that the University chose to adopt *post hoc* is extreme and

outrageous.

112.    Moreover, the University's conduct goes beyond all bounds of decency in the manner in which is degrades adult women students. The University on one hand finds that Sarah Hulbert is mature and responsible enough to be an RA, acting as a counselor and advisor to freshman students leaving home for the first time, and also intelligent enough to hold a teaching assistant position, yet somehow the University deems that she is incapable of understanding the nature of her consent to various sexual activities, and has to be protected from her own sexual choices and actions because she may be of harm to herself. Adult women students, have every right to engage in sexual experimentation just as do adult male students. Absolving a women of all responsibility for her sexual choices and actions implicitly states that she does did not act rationally in making those choices, and does not have the capacity to making the same choices as male students, so she must be protected from herself. Such conduct by a University, 40 years after the adoption of Title IX, is extreme and outrageous.

113.    The University's conduct has caused Dylan Routh and C. Renée Manes to suffer severe and extreme emotional distress. The ramifications to a young man of being accused of sexual assault – and falsely accused – cannot be underestimated in this day and age. The stress on the family forced by the University to become involved in the proceedings is equally severe. Plaintiff C. Renée Manes was a reasonably foreseeable victim of the extreme and outrageous conduct by the University of Rochester because the University of Rochester forced Dylan Routh to inform C. Renée Manes of his suspension and the pending disciplinary proceedings.

114.    The University of Rochester has published the results of the disciplinary hearing and expulsion of Dylan Routh within the University community, and has explicitly stated that it will

FIRST AMENDED COMPLAINT FOR DAMAGES

publicize the results of the disciplinary hearings to any institutions of higher education to which Dylan Routh may apply.

115.    Plaintiff reserves the right to supplement these allegations as additional facts are developed through the discovery process.

116.    The conduct alleged herein is the proximate cause of significant damages to Dylan Routh and C. Renée Manes, and they seeks recovery of all actual and compensatory losses, along with an award of damages for emotional distress.

## SIXTH CAUSE OF ACTION

## DEFAMATION (LIBEL AND SLANDER)

### (Dylan Routh versus Sarah Hulbert, Individually)

117.    Plaintiff Dylan Routh incorporates all prior and subsequent paragraphs and for this cause of action alleges specifically as follows. Plaintiff reiterates that proof of all of the facts alleged herein exist in significant documentation and a record that are in the possession of Defendants, and to which Plaintiff has been denied access.

118.    Defendant Sarah Hulbert defamed Dylan Routh, both orally and in writing, when she falsely alleged that Dylan Routh subjected her to sexual assault and rape during the period of September 2010 through April/May 2011. Sarah Hulberts oral and written statements were false, made with the knowledge of their falsity or with reckless disregard for the truth or falsity of the statements. The statements accused Dylan Routh of criminal activity of an extremely serious nature and were slanderous and libelous *per se*.

119.    The specific statements were made orally and in writing to the University of

FIRST AMENDED COMPLAINT FOR DAMAGES

Rochester between September 19 and September 29, 2011. The statements are in the custody and control of the Defendants, but include at the least the allegations articulated in the charging letter of September 22, 2011, that Dylan Routh had "anal and vaginal intercourse with Sarah [Hulbert] without her consent, hit her, burned her, whipped her, strangled her and detained her against her will." All such allegations are false, and Sarah Hulbert knew they were false at the time the statements were made. In fact, all sexual activity – of any nature – occurring between Sarah Hulbert and Dylan Routh was fully consensual.

120. Had Sarah Hulbert never made her false and defamatory allegations, the University of Rochester would never have initiated disciplinary proceedings against Dylan Routh, and would never have subjected him to the discipline of expulsion based on the nature of the private, consensual sexual conduct between Dylan Routh and Sarah Hulbert. Dylan Routh was therefore directly and specifically harmed by Sarah Hulbert's defamatory conduct.

121. Plaintiff reserves the right to supplement these allegations as additional facts are developed through the discovery process.

122. The defamation alleged herein is the proximate cause of significant damages to Dylan Routh, and he seeks recovery of all actual and compensatory losses, along with an award of damages for emotional distress. Plaintiff further asserts that treble and/or punitive damages are available and appropriate under this cause of action.

FIRST AMENDED COMPLAINT FOR DAMAGES

## SEVENTH CAUSE OF ACTION

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

### (Dylan Routh versus Sarah Hulbert, Individually)

123. Plaintiff Dylan Routh incorporates all prior and subsequent paragraphs and for this cause of action alleges specifically as follows. Plaintiff reiterates that proof of all of the facts alleged herein exist in significant documentation and a record that are in the possession of Defendants, and to which Plaintiff has been denied access.

124. The conduct of Sarah Hulbert to Dylan Routh in this matter was intentional or reckless and extreme and outrageous, ultimately causing severe emotional distress to Dylan Routh. Accusing a young man of rape and sexual assault based on conduct that occurred months before in order to retaliate for the young man breaking up with her is conduct that goes beyond all bounds of decency, and is without any justification. Sarah Hulbert's only purpose for making such allegations was to ensure that Dylan Routh would "rot in hell" because, as she stated she "hate[d him] more than anyone else." Sarah Hulbert was not a women who had been assaulted, she was a woman who had been spurned, and she directed all her fury at ruining the life of Dylan Routh.

125. Sarah Hulbert made public her allegations of non-consensual sexual activity to individuals and entities including but not limited to the University of Rochester.

126. Plaintiff reserves the right to supplement these allegations as additional facts are developed through the discovery process.

127. The conduct alleged herein is the proximate cause of significant damages to Dylan Routh, and he seeks recovery of all actual and compensatory losses, along with an award of damages for emotional distress. Plaintiff further asserts that treble and/or punitive damages are available and

appropriate under this cause of action.

## EIGHTH CAUSE OF ACTION

## INTENTIONAL INTERFERENCE WITH EXISTING CONTRACTUAL RELATIONS

### (Dylan Routh versus Sarah Hulbert, Individually)

128.    Plaintiff Dylan Routh incorporates all prior and subsequent paragraphs and for this cause of action alleges specifically as follows. Plaintiff reiterates that proof of all of the facts alleged herein exist in significant documentation and a record that are in the possession of Defendants, and to which Plaintiff has been denied access.

129.    Plaintiff Dylan Routh and defendant the University of Rochester had a contractual relationship that was beneficial to him as delineated in the Second Cause of Action. Sarah Hulbert was aware of the relationship between Dylan Routh and the University of Rochester.

130.    Sarah Hulbert intentionally interfered in the relationship between Dylan Routh and the University of Rochester, with the goal and desire to have the University of Rochester terminate its contractual relationship with Dylan Routh.

131.    Sarah Hulbert's interference was malicious and based on false allegations of sexual assault and rape. Sarah Hulbert's intent in make the false allegations of sexual assault and rape were for the purpose of interfering with the contractual relationship between Dylan Routh and the University of Rochester. Sarah Hulbert had no right or privilege to make such false allegations of sexual assault or rape, or to interfere with the contractual relationship between Dylan Routh and the University of Rochester based on such false allegations, and her actions were unlawful and improper, for reasons including the fact that they were false, malicious and defamatory.

132. As a result of Sarah Hulbert's conduct, the University of Rochester terminated its contractual and beneficial relationship with Dylan Routh. Had it not been for Sarah Hulbert's interference the University of Rochester would not have terminated its relationship with Dylan Routh.

133. Plaintiff reserves the right to supplement these allegations as additional facts are developed through the discovery process.

134. The intentional interference alleged herein is the proximate cause of significant damages to Dylan Routh, and he seeks recovery of all actual and compensatory losses, along with an award of damages for emotional distress. Plaintiff further asserts that treble and/or punitive damages are available and appropriate under this cause of action.

## JURY TRIAL DEMAND

Plaintiffs Dylan D. Routh and C. Renée Manes demand a jury trial on all causes of action alleged herein for which such a trial is available.

## PRAYER FOR RELIEF

Based on the causes of action alleged herein, Plaintiffs pray for an award of the following relief:

1. Injunctive relief including removing all disciplinary allegations and findings regarding this incident from the file of Dylan Routh and a return to his status as a student in good standing at the University of Rochester, along with a cease and desist order precluding the University of Rochester and/or Sarah Hulbert from making any further allegations of sexual misconduct against

Dylan Routh arising from the incidents underlying this matter.

2.    Actual and compensatory damages in an amount to be proven, but currently including: return of all funds paid to the University of Rochester and affiliated agencies believed to be in excess of $175,000.00; reimbursement of all damages incurred in addressing the allegations and the disciplinary action at issue herein currently believed to be in excess of $25,000.00; actual and compensatory damages in the loss of the value of an undergraduate degree from the University of Rochester currently estimated to be in excess of $5,000,000.00.

3.    An award sufficient to compensate the plaintiffs for the pain and suffering that they have endured in an amount to be proven, but currently estimated to be equal to all actual and compensatory damages asserted previously.

4.    Reimbursement of all costs and fees incurred in this action.

5.    Treble and punitive damages where appropriate and allowed by law.

6.    Such further and additional relief as is deemed just and equitable.

Signed this 23 day of March, 2012.

By: _____
Dylan D. Routh, Plaintiff *In Pro Per*

By: _____
C. Renée Manes, Plaintiff *In Pro Per*

**FIRST AMENDED COMPLAINT FOR DAMAGES**

## CERTIFICATE OF SERVICE

The undersigned swear that the foregoing was served on the following counsel

for the parties both by e-mail to the e-mail addressed of record and by placing a copy,

postage pre-paid, in the United States mail and addressed as follows:

Paul L. Leclair
Jeremy M. Sher
Leclair, Korona, Giordano, Cole,
LLP
150 State Street, Suite 300
Rochester, NY 14614

email:
pleclair@leclairkoronoa.com;
jsher@leclairkorona.com

Harold Kurland
Ward, Greenberg, Heller & Reidy LLP
300 State Street
Rochester, NY 14614

email:
hkurland@wardgreenberg.com

RESPECTFULLY SUBMITTED this ____ day of March, 2012.

Dylan D. Routh

C. Renée Manes