UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

DYLAN ROUTH,

                 Plaintiff,

vs.

UNIVERSITY OF ROCHESTER and
SARAH HULBERT,

                 Defendants.

**AMENDED COMPLAINT**

6:11-CV-6606-CJS

---

       Plaintiff, Dylan Routh (hereafter "Mr. Routh" or "Plaintiff"), by and through his attorney, Jeffrey Wicks, PLLC, as and for his Complaint against the defendants, alleges as follows:

## PARTIES

1.     Plaintiff, Dylan Routh, is a male citizen of the State of Oregon.

2.     Defendant University of Rochester (hereafter "the University") is an educational institution incorporated under the Education Law of the State of New York, with its principal place of business located in the City of Rochester, State of New York.

3.     Defendant Sarah Hulbert (hereafter "Defendant Hulbert") is a female citizen of the State of New York.

## JURISDICTION AND VENUE

4.     This Court has original jurisdiction pursuant to 28 U.S.C. section 1332 since there is complete diversity among the parties and the amount in controversy exceeds $75,000.00.

1

5.      This Court also has federal subject matter jurisdiction, pursuant to 28

U.S.C. 1331, with respect to Mr. Routh's claim that the University violated his

right to be free from sexual harassment and/or discrimination, pursuant to 20

U.S.C. section 1681, *et seq*. ("Title IX"), as well as jurisdiction pursuant to 28

U.S.C. section 1343.

6.      In addition, Mr. Routh invokes the Court's pendent jurisdiction over

claims based upon the laws of the State of New York, pursuant to 28 U.S.C.

section 1367.

7.      This action has been commenced within all applicable statutes of

limitations.

8.      Venue in the Western District of New York is proper, pursuant to 28

U.S.C. section 1391, since both defendants are residents of the State of New York

and reside in the Western District of New York.

## FACTS

### A.      The Routh-Hulbert Relationship

9.      At all times relevant herein, Mr. Routh was an undergraduate student at

the University, having commenced his studies there in September, 2008.

10.     At all times relevant herein, the Defendant Hulbert was an undergraduate

student at the University, also having commenced her studies there in September,

2008.

11.     In October, 2008, Mr. Routh met the Defendant Hulbert.

12.     For the approximately three years between October, 2008 and September,

2011, Mr. Routh and the Defendant Hulbert maintained a personal relationship

2

which, at times, included consensual sexual activity.

13.     At no time during this relationship with the Defendant Hulbert did Mr.
Routh engage in any activities with the Defendant Hulbert to which the Defendant
Hulbert objected and/or did not give her consent.

14.     At all times relevant herein, both Mr. Routh and the Defendant Hulbert
were over the age of eighteen.

15.     Upon information and belief, at all times relevant herein the Defendant
Hulbert was under no disability which could have affected her capacity to enter
into their relationship or engage in the activities described herein.

16.     In September, 2011, the Defendant Hulbert sent Mr. Routh a number of
text messages indicating her desire to continue their relationship, including sexual
activity.

17.     In response, on or about September 16, 2011, Mr. Routh advised the
Defendant Hulbert that he did not wish to continue their relationship.

### B. The Defendant Hulbert Complains to the University and Disciplinary Charges are Brought Against Mr. Routh

18.     On or about September 19, 2011, three days after Mr. Routh advised the
Defendant Hulbert that he did not wish to continue their relationship, the
Defendant Hulbert  made a complaint to employees of the University of Rochester
that between September, 2010 and April/May 2011, Mr. Routh had engaged in
sexual conduct with her against her consent and had otherwise assaulted her.

19.     Specifically, on September 19, 2011, at approximately 4:30 p.m. at the
Wilson Commons on the University campus, the Defendant Hulbert told

University Security Investigator T. W. Belcher and Investigator Willman that Mr.
Routh "sexually and physically abused" her and had "forcible intercourse" with
her over the course of the previous year.

20.     In addition, the Defendant Hulbert submitted a five-page written statement
to the University in which she made detailed allegations against Mr. Routh.

21.     Based upon the allegations made to Inv. Belcher and Inv. Willman by the
Defendant Hulbert, the investigators concluded that the following criminal
charges could be brought against Mr. Routh:  Strangulation in the Second Degree
(N.Y. Penal Law section 121.12 [ a Class D Felony]), Rape in the First Degree
(N.Y. Penal Law section 130.35 [a Class B Felony]), Aggravated Sexual Abuse in
the First Degree (N.Y. Penal Law section 130.70 [a Class B Felony]), Unlawful
Imprisonment in the First Degree (N.Y. Penal Law section 135.10 [a Class E
Felony])  and Reckless Endangerment in the First Degree (N.Y. Penal Law
section 120.25 [a Class D Felony]).

22.     As a result of the complaint made by the Defendant Hulbert, on September
20, 2011 Mr. Routh was summarily suspended from the University and ordered
off the campus by Assistant Dean of Students Morgan Levy.

23.     Mr. Routh was immediately escorted from the University campus by
University Security personnel and advised that his future presence on campus
would constitute  criminal trespass.

24.     In addition, Mr. Routh was ordered to avoid all contact with the Defendant
Hulbert by Assistant Dean Levy.

25.     By a letter dated September 22, 2011, Assistant Dean Levy advised Mr.

Routh that he was being charged by the University with violating the Standards of

Student Conduct, Section VI, specifically items 5(a) (disorderly conduct), 11

(sexual harassment) and 12 (sexual misconduct or assault, including any form of

unwanted sexual conduct), all allegedly occurring between September, 2010 and

September, 2011.

26.     Following receipt of the disciplinary charges, Mr. Routh advised Assistant

Dean Levy that he wished to file a cross-complaint against the Defendant Hulbert,

based upon her purported knowledge of the disciplinary infractions allegedly

committed by Mr. Routh that she failed to promptly report to campus authorities,

as required of her by the Standards of Student Conduct.

27.     According to the Standards of Student Conduct, "[F]ailure to do so [report

serious acts of misconduct] can be considered acts of complicity, and may result

in that student's facing the same charges as active participants."

28.     Assuming *arguendo* that Mr. Routh's activities with the Defendant

Hulbert violated the University's Standards of Student Conduct, the Defendant

Hulbert also violated the Standards by "failing to report serious acts of

misconduct to appropriate authorities."

29.     Mr. Routh also advised Assistant Dean Levy that he wished to file a cross-

complaint against the Defendant Hulbert alleging, inter alia, that her complaint

was filed in retaliation for his refusal to continue their relationship.

30.     Dean Levy advised Mr. Routh that she would not accept a cross-complaint

by Mr. Routh against the Defendant Hulbert.

31.     Mr. Routh also advised the University that the notice of what disciplinary

infractions with which he was being charged did not conform to the University's code of student conduct regarding specificity of charges.

32.     This lack of specificity was admitted by the University's counsel, Richard Crummins.  In an e-mail dated September 23, 2011, to Mr. Routh's mother, Renee Manes, Esq., Mr. Crummins conceded:

"Let me say first that you have a valid point about the

specificity of the charge letter.  We can definitely improve

how those are written."

33.     Despite Mr. Crummins' acknowledgement that the notice was deficient, no further specification of the charges was provided to Mr. Routh.

34.     Assistant Dean Levy advised Mr. Routh that the University's Policy 5(a) could be construed widely enough to include consensual sexual relations.

### C. The Disciplinary Hearing

35.     A disciplinary hearing with respect to the foregoing charges was conducted on September 29, 2011 before a panel of three University administrators: Joellen Kuhl, Assistant Finance and Operations Officer, Stephanie Beetle, Senior Student Advisor and Chris Apple, Men's Soccer Head Coach.

36.     Mr. Routh was not permitted to have an attorney represent him at the hearing. The only assistance Mr. Routh was permitted to have was a University-appointed counselor who could not speak on Mr. Routh's behalf but could only answer procedural questions.

37.     Both Mr. Routh and the Defendant Hulbert testified at the disciplinary hearing and provided written statements.

### i.   The Defendant Hulbert's Written Statement

38. The written statement previously made by the Defendant Hulbert was published to the

members of the administrative hearing board.

39.   The following statements contained in the Defendant Hulbert's written

statement are false:

> Paragraph 1:   The Defendant Hulbert's allegations that in mid-September, 2010, Mr. Routh continued to have anal sex with her after she used the pre-arranged safety word, or that in the other instances described in the statement he continued to engage in the activities described by the Defendant Hulbert after she used the agreed-upon "safety phrase".

> Paragraph 2:   That in November, 2010, Mr. Routh left the Defendant Hulbert handcuffed overnight before his return and thereafter for an additional three hours.

> Paragraph 3: The Defendant Hulbert's allegations that the activities alleged therein were conducted without her consent, the he physically prevented the Defendant Hulbert from leaving the shower until he had ejaculated or that he forced her to swallow his urine.

> Paragraph 4: That in November, 2010, Mr. Routh raped her, forced her legs apart or forced a bubble wand into her anus after being told to stop by the Defendant Hulbert.

> Paragraph 5: The Defendant Hulbert's allegations that "I woke up to him being on top of me, with his crotch in my face. I tried to push him away, but he kept forcing himself on me and wouldn't stop. He then forced me to roll over and I was facedown on my bed, with my face in the comforter. He got on top of me and he kept trying to lift up my skirt from behind to have anal sex with me. I kept telling him to stop and I kept trying to escape, but he just sat on top of me harder and he hit me and left two large bruises on my upper leg. There were also bruises on my ass. I just remember panicking and becoming very, very upset. I remember feeling like I was going to pass out, because he was pressing my face down into the comforter and trying to force me to have anal sex with him. I was kicking him while I was wearing high heels, and I was trying to hit him as hard as I could. I finally managed to get out from under him, but I don't know how I did it. I remember

him getting up, and asking me if I was going to have sex with him or not. I said no, and he opened the door and threw me out into the hallway."

Paragraph 6: The Defendant Hulbert's allegations that Mr. Routh put underwear in the Defendant Hulbert's mouth, duct-taped her mouth shut and duct-taped her hair, put a bandana around her eyes, tied her legs together and handcuffed her hands behind her back, all without her consent, that she "freaked out", ripped the duct tape off her mouth and hair and told Mr. Routh to get out.

Paragraph 7: The Defendant Hulbert's allegations that Mr. Routh duct-taped her legs closed, put duct-tape around her mouth/head and handcuffed her arms behind her back without her consent, that she asked Mr. Routh to uncuff her and that he refused to uncuff her.

Paragraph 9: The Defendant Hulbert's allegations that Mr. Routh whipped her with a belt multiple times without her consent.

Paragraph 10: The Defendant Hulbert's allegations that "Dylan has used an electrical cord to whip my back and has left lashes on my back."

Paragraph 11: " Dylan has used a lighter to burn my nipples" and the Defendant Hulbert's allegations that Mr. Routh poured hot wax on her without her consent.

Paragraph 12: The Defendant Hulbert's allegations that Mr. Routh struck her without her consent.

Paragraph 13: The Defendant Hulbert's allegations that Mr. Routh left her handcuffed for three hours alone in her room.

Paragraph 14: The Defendant Hulbert's allegations that Mr. Routh would strike her if she spoke "out of turn".

Paragraph 15: The Defendant Hulbert's allegations that the activities alleged therein were conducted without her consent.

Paragraph 16: "Dylan would bite my chest until I would bleed or be bruised if I didn't do what he wanted".

Paragraph 17: "Dylan has told me in the past that he has pictures of me naked and has saved them in case he ever needed to blackmail me".

Paragraph 18: "[Mr. Routh] Ejaculated inside of me during sexual intercourse even when I explicitly told him not to."

Paragraph 19: The Defendant Hulbert's allegations that Mr. Routh would hurt her if she did not do what he wanted or that Mr. Routh did not tell the Defendant Hulbert that he had a staph infection.

Paragraph 20: That Mr. Routh had not showered after having sex with someone else and subsequently had sex with the Defendant Hulbert.

### ii.   The Defendant Hulbert's Oral Statement

40.    In addition, the oral testimony given by the Defendant Hulbert to the administrative hearing board was false.

41.    Specifically, the Defendant Hulbert gave false oral testimony at the disciplinary hearing. A review of the recording of that proceeding reveals that in her testimony she falsely stated that, *inter alia*, Mr. Routh raped her, sexually and otherwise assaulted her and/or engaged in activities with her without her consent, including but not limited to the following statements (with time references to reflect the approximate time when such testimony was given:

- That Mr. Routh forced the Defendant Hulbert to continue to have oral sex with him and forced her to have anal sex with her after she had supposedly used the "safe word." (Part 1, 59:36-1:00:40)

- That Mr. Routh forced her to clean off his penis with her mouth by threatening her. (1:00:50-1:01:09)

- That Mr. Routh refused to remove the handcuffs from the Defendant Hulbert and left her naked and handcuffed overnight, and for three hours the following day. (1:01:10-1:02:10)

- That Mr. Routh forced the Defendant Hulbert to have anal sex with him or refused to remove the handcuffs or tape upon her request, that he refused to loosen the belt, that he burned her with water without her consent, that he blocked her exit from the shower or

forced her to swallow liquid. (1:02:13- 1:04:25)

- That Mr. Routh continued to insert a "bubble wand" in the Defendant Hulbert's rectum after being instructed to remove it or that Mr. Routh raped the Defendant Hulbert. (1:04:25-1:04:45)

- That, without her consent, Mr. Routh put underwear in the Defendant Hulbert's mouth, duct-taped her mouth shut, put a bandana around her eyes, tied her legs together and handcuffed her hands behind her back. (1:05:03-1:05:33)

- That Mr. Routh told the Defendant Hulbert to perform oral sex upon him after he had had anal intercourse with another female and had not showered thereafter. (1:06:03-1:06:18)

- That Mr. Routh forced the Defendant to have anal sex with him, that she struggled to get free from him and/or that he threw her in the hallway.
(1:06:29-1:08:31)

- That Mr. Routh whipped the Defendant with an electrical cord, burned her with a lighter or engaged in sexual activities without her consent. (1:08:31-1:09:09)

- That Mr. Routh threatened to blackmail the Defendant Hulbert with naked pictures of her or that he threatened her to get her to lick his anus. (1:10:19-1:10:33)

- That Mr. Routh continued to engage in sexual activity with the Defendant Hulbert after the Defendant Hulbert used the "safety word", indicating that he should stop. (1:15:14-1:15:20)

- That Mr. Routh threatened the Defendant Hulbert to have sex with him, that he    had sex with her without her consent and/or that he continued to engage in sexual activity with her once she used the "safety word". (1:15:49-1:16:03)

- That Mr. Routh raped the Defendant Hulbert. (1:17:55-117:57)
That Mr. Routh left the Defendant Hulbert alone handcuffed and duct-taped without her consent. (1:18:27-1:18:35)

- That Mr. Routh engaged in sexual conduct with the Defendant Hulbert without her consent, threatened her and/or committed sexual assault upon her. (Part 2, 57:40-59:24)

42.    Mr. Routh, both in oral statements and written submissions advised the

administrative hearing board that that he denied committing any acts with the Defendant Hulbert which would constitute a violation of the University's disciplinary rules and, specifically, denied having any non-consensual interactions with the Defendant Hulbert.

43.     There was no evidence adduced at the hearing that at any time during the approximately eight months during which the allegedly non-consensual conduct occurred did the Defendant Hulbert make any complaint of such conduct to any University officials or representatives.

44.     In addition, the Defendant Hulbert testified that, as late as December, 2010, none of the activities in which she engaged with Mr. Routh caused her any distress.

### D. The Expulsion of Mr. Routh

45.     By a letter, dated September 30, 2011, Assistant Dean Levy advised Mr. Routh that the administrative hearing board found Mr. Routh responsible for having engaged in conduct constituting violations of the University's Standards of Student Conduct, Section VI, specifically items 5(a) and 12.

46.     Based upon this finding in the aforementioned letter, Dean Levy imposed a penalty of expulsion from the University, citing "the violent nature of the incidents for which this hearing was convened and your extensive prior disciplinary history."

47.     Mr. Routh appealed this determination to Peter Lennie, Senior Vice President and Dean of College Faculty.

48.     On December 2, 2011, Dean Lennie upheld Dean Levy's decision to expel

Mr. Routh from the University.

49.     The December 2, 2011 decision is final and binding upon Mr. Routh and

is not subject to further review by the University or any other body or officer.

### E.  The Criminal Charges Against Mr. Routh

50.     Upon information and belief, based upon a complaint made by the

Defendant Hulbert to law enforcement officials with respect to the conduct

described at paragraph __, above, felony charges against Mr. Routh were

submitted to a Monroe County Grand Jury by the Monroe County District

Attorney's Office.

51.     Following testimony from both Mr. Routh and the Defendant Hulbert, the

Monroe County Grand Jury returned a "no bill" of indictment against Mr. Routh,

signifying that there were not reasonable grounds to believe that he had

committed any of the offenses submitted to the Grand Jury.

### F.  Family Court Proceedings

52.     On or about October 21, 2011, the Defendant Hulbert filed a Family

Offense Petition in the Monroe County Family Court alleging that Mr. Routh had

committed a number of family offenses defined in Article 8 of the N.Y. Family

Court Act.

53.     In her petition, the Defendant Hulbert sought, inter alia, an order of

protection prohibiting any contact between herself and Mr. Routh.

54.     At the time of the filing of the petition, Mr. Routh lived in Portland,

Oregon and had not initiated any contact with the Defendant Hulbert since his

expulsion from the University.  Indeed, the only post-hearing contact was initiated

by the Defendant Hulbert in which she attempted to contact Mr. Routh in an effort by her to re-establish their relationship.

### G. Mr. Routh's Expulsion and Subsequent Damages

55.    At all times during his attendance at the University, Mr. Routh complied with the regulations, rules, policies and other terms of attendance prescribed by the University, including the payment of tuition.

56.    Specifically, Mr. Routh did not violate any of the University's Principles of Student Conduct with respect to his relationship with the Defendant Hulbert.

57.    As a result of the Defendants' conduct described above, Mr. Routh was expelled from the University of Rochester.

58.    Upon information and belief, the University has a policy of advising any educational institution to which Mr. Routh may apply and that requests a transcript of his courses and grades that he was expelled from the University for non-academic reasons.

59.    As a result of the policy, Mr. Routh is effectively precluded from being accepted at any reputable college or university and, consequently, cannot complete his undergraduate studies.

60.    The false statements of the Defendant Hulbert have caused Mr. Routh embarrassment, humiliation and mental anguish.

61.    In addition, Mr. Routh was required to expend money to retain an attorney with respect to the proposed criminal charges brought by the Defendant Hulbert which were ultimately dismissed by the Grand Jury.

## AS AND FOR A FIRST CAUSE OF ACTION
## AGAINST THE UNIVERSITY OF ROCHESTER
## FOR BREACH OF CONTRACT

62.     Plaintiff repeats and realleges paragraphs 1 through 61 as if set forth fully herein.

63.     At all times relevant herein, an implied contract existed between Mr. Routh and the University such that if Mr. Routh complied with the terms prescribed by the University he would obtain the degree which he sought.

64.     At all times during his attendance at the University, Mr. Routh fully complied with the terms of attendance prescribed by the University.

65.     At all times during his attendance at the University, Mr. Routh gave consideration to the University by paying his tuition, attending classes and engaging in those acts necessary for him to complete his contractual obligations to the University.

66.     By expelling Mr. Routh, the University breached the terms of its contract with Mr. Routh.

67.     In addition, as noted above, the University has effectively precluded Mr. Routh from completing his undergraduate education by gratuitously advising any educational institution to which Mr. Routh may apply of his expulsion for "non-academic" reasons.

68.     As a result of the University's breach, Mr. Routh has sustained damages including, but not limited to, loss of tuition, the inability to complete his undergraduate education, loss of future income, humiliation, embarrassment and mental anguish.

## AS AND FOR A SECOND CAUSE OF ACTION
## AGAINST THE UNIVERSITY OF ROCHESTER
## A PETITION PURSUANT TO C.P.L.R. ARTICLE 78

69.     Plaintiff repeats and realleges paragraphs 1 through 68 as if set forth fully herein.

70.     Pursuant to New York Civil Practice Law and Rules ("C.P.L.R.") section 7802, the University's administrative hearing board is a "body or officer" whose determinations are subject to review pursuant to this C.P.L.R. Article 78 proceeding.

71.     The determination of the administrative hearing board that Mr. Routh had violated the University's Standards of Student Conduct was arbitrary and capricious.

72.     Specifically, the Defendant Hulbert's allegations of misconduct were unsupported by any contemporaneous complaints to University officials.  Indeed, such activities allegedly continued for a period of over a year without the Defendant Hulbert making complaint to any University officials of Mr. Routh's alleged activities and were only complained of by the Defendant Hulbert after Mr. Routh refused to continue their relationship.

73.     In many instances, the Defendant Hulbert testified that she was a willing participant in the acts of sexual bondage, anal sex and other acts of which she later complained.

74.     Even crediting the testimony of the Defendant Hulbert in many respects, her testimony that Mr. Routh "threatened" her often referred to his alleged

"threats" to terminate their relationship.

75.     As noted previously, the University conceded that Mr. Routh was not

provided with adequate notice of the specific conduct which was to be the subject

of the disciplinary proceedings.

76.     In addition, the decision of the hearing board cites only the rules allegedly

violated by Mr. Routh, unsupported by any reference to any specific conduct on

his part constituting a violation of the rules, or explanation of how such conduct

constituted a violation of the rules of student conduct.

77.     In addition, the decision of the hearing board must be viewed in the light

of the determination of the Grand Jury, which after hearing both the Defendant

Hulbert and Mr. Routh, concluded that there were no reasonable grounds to

believe that he had committed the crimes alleged by the Defendant Hulbert.

78.     The determination of the administrative hearing board that Mr. Routh had

violated the University's Standards of Student Conduct was not supported by

substantial evidence.

79.     The University's determination to impose a disciplinary penalty of

expulsion was an abuse of discretion.

80.     Although Dean Levy cited Mr. Routh's "extensive disciplinary history"

as a basis for her imposing the penalty of expulsion, Mr. Routh had no such

history.

81.     The disciplinary infractions of which Mr. Routh had previously been

found responsible were relatively minor offenses, such as possessing alcohol

paraphernalia (a University of Rochester shotglass purchased in the Campus

Bookstore), possessing a wireless router and accidentally damaging school property.

82.    One incident relied upon by the University is Mr. Routh's possession of a knife, which was found in his clothes while he was being admitted to Strong Memorial Hospital.

83.    Mr. Routh carried a knife at that time for protection, following his being robbed at gunpoint in the Genesee Valley Park.

84.    Neither this, nor any of the other disciplinary infractions with which Mr. Routh had been charged involved injury or threats of injury to any person.

85.    Mr. Routh has exhausted all of the administrative remedies available to him.

**AS AND FOR A THIRD CAUSE OF ACTION
AGAINST THE UNIVERSITY OF ROCHESTER
PURSUANT TO 20 U.S.C. SECTION 1681 ("TITLE IX")**

86.    Plaintiff repeats and realleges paragraphs 1 through 85 as if set forth fully herein.

87.    The University of Rochester is an institution of higher learning receiving federal funds and is therefore subject to the provisions of 20 U.S.C. section 1681 (hereafter "Title IX").

88.    As noted previously, the University refused to allow a cross-complaint by Mr. Routh against the defendant Hulbert, despite the fact that she admittedly willingly participated in at least some of the acts which formed the basis of the disciplinary charges against him and failed to report it to the University for over a year.

89.    Upon information and belief, except in the present case, the University has never brought disciplinary charges against one student for consensual sexual conduct involving another student.

90.    Upon information and belief, the University's decision to solely prosecute Mr. Routh was based upon his sex as a male, as reflected in its decision to refuse to allow a cross-complaint by Mr. Routh against a female.

91.    In addition, as noted previously, Mr. Routh is innocent of any disciplinary violations  and was wrongly found guilty.

92.    Also, as noted previously, the disciplinary hearing was procedurally flawed by virtue of its failure to provide Mr. Routh with sufficient notice of the specific charges against him, as well as the failure to specify the acts for which Mr. Routh was ultimately found responsible.

93.    The University's refusal to specify the acts supporting the charges either before or after the hearing is due to the inability of the University to charge Mr. Routh without simultaneously inculpating the Defendant Hulbert in the same violations.

94.    The penalty imposed upon Mr. Routh was also affected by his gender, since he was expelled while the Defendant Hulbert suffered no penalty for her conduct since the University refused to allow Mr. Routh to file a cross-complaint.

95.    The University is under an obligation to protects its students from sexual harassment and/or discrimination, pursuant to Title IX.

96.    By refusing to allow disciplinary charges against a female, yet simultaneously prosecuting a male for conduct engaged in by both of them, the

University discriminated against Mr. Routh in violation of Title IX.

### AS AND FOR A FOURTH CAUSE OF ACTION
### AGAINST THE DEFENDANT HULBERT
### FOR DEFAMATION

97.     Plaintiff repeats and realleges paragraphs 1 through 96 as if set forth fully

herein.

98.     The statements recited in paragraphs 19, 39 and 41, above, were false,

were made with the knowledge of their falsity or with reckless disregard for the

truth or falsity thereof.

99.     The statements recited in paragraphs  19, 39 and 41 were slanderous and

libelous *per se* since they allege the commission of a number of serious crimes, as

evidenced by the statements of the University Security officers and the

submission of proposed felony charges to the Monroe County Grand Jury.

100.    As a result of the defamatory statements made by the Defendant Hulbert,

Mr. Routh has sustained damages including, but not limited to, expulsion from the

University of Rochester, loss of tuition, the inability to complete his

undergraduate education, loss of future income, humiliation, embarrassment and

mental anguish.

### AS AND FOR A FIFTH CAUSE OF ACTION
### AGAINST THE DEFENDANT HULBERT FOR
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

101.    Plaintiff repeats and realleges paragraphs 1 through 100 as if set forth fully

herein.

102.    The foregoing conduct of the Defendant Hulbert in making the defamatory

statements referenced herein, initiating false disciplinary charges against Mr.

Routh, commencing criminal charges against Mr. Routh and a Family Court petition was extreme and outrageous, went beyond all bounds of decency and was atrocious and utterly intolerable in a civilized community.

103.    The Defendant Hulbert intended to cause, or disregarded the substantial likelihood of causing severe emotional distress to Mr. Routh.

104.    As a result of the foregoing conduct by the Defendant Hulbert, Mr. Routh has sustained damages including, but not limited to, expulsion from the University of Rochester, loss of tuition, legal expenses, the inability to complete his undergraduate education, loss of future income, humiliation, embarrassment and mental anguish.

WHEREFORE, Plaintiff Dylan Routh, demands judgment against the Defendants as follows:

A.    On the First Cause of Action, in favor of Plaintiff in the amount of Two Million Dollars ($2,000,000.00);

B.    On the Second Cause of Action, in favor of Plaintiff in the amount of Two Million Dollars ($2,000,000.00);

C.    On the Third Cause of Action, in favor of Plaintiff in the amount of Two Million Dollars ($2,000,000.00);

D.    On the Fourth Cause of Action, in favor of Plaintiff in the amount of Two Million Dollars ($2,000,000.00);

E.    On the Fifth Cause of Action, in favor of Plaintiff in the amount of Two Million Dollars ($2,000,000.00);

F.    In favor of Plaintiff in the amount of Two Million Dollars ($2,000,000.00) as

punitive damages against the defendants;

G.  An Order reversing and annulling the September 29, 2011 decision by the

University finding Mr. Routh guilty of disciplinary infractions and imposing a

sanction of expulsion;

H.  That Plaintiff be awarded the costs and disbursements of this action; and

I.   For such other and further relief as to this Court may seem just and proper.

**PLEASE NOTE: PLAINTIFFS HEREBY DEMANDS TRIAL BY JURY**

Dated:  May 15, 2013                              *s/Jeffrey Wicks*
                                                  Jeffrey Wicks, PLLC
                                                  Attorney and Counselor at Law
                                                  Attorney for Plaintiffs
                                                  36 West Main Street, Suite 101
                                                  Rochester, New York 14614
                                                  Tel: 585.325.6070
                                                  Fax: 585.325.6082
                                                  Email:  wickslaw@rochester.rr.com

VERIFICATION

STATE OF OREGON       )
COUNTY OF Multnomah )  SS.:

Dylan Routh, being duly sworn, deposes and says that deponent is Mr. Routh in the within matter. Deponent has read the within Complaint and knows the contents thereof; that the same is true to deponent's knowledge except as to matters stated to be alleged on information and belief and that as to such matters deponent believes them to be true.

DYLAN ROUTH

Sworn to before me this
13th day of May, 2013

Notary Public

OFFICIAL SEAL
SARA G JONES
NOTARY PUBLIC-OREGON
COMMISSION NO. 470958
MY COMMISSION EXPIRES AUGUST 27, 2016

17