UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

DYLAN ROUTH,                                                    DECISION AND ORDER

                                    Plaintiff,                  11-CV-6606 CJS

            -v-

UNIVERSITY OF ROCHESTER, SARAH
HULBERT (as staff member of the University
of Rochester) and SARAH HULBERT
(individually),

                                    Defendants.

---

APPEARANCES

For Plaintiff:                    Jeffrey Wicks
                                  Jeffrey Wicks, PLLC
                                  36 West Main Street
                                  Suite 318
                                  Rochester, New York 14614

For University of
Rochester:                        Harold A. Kurland
                                  Anitra Das
                                  Ward Greenberg Heller & Reidy LLP
                                  300 State Street, 6th Floor
                                  Rochester, New York 14614

For Sarah Hulbert:                Paul L. Leclair
                                  Mary Jo S. Korona
                                  Laurie A. Giordano
                                  Jeremy M. Sher
                                  Leclair Korona Giordano Cole LLP
                                  150 State Street, Suite 300
                                  Rochester, New York 14614

INTRODUCTION

In the instant action a male former student at the University of Rochester is suing the University and a female classmate over actions that resulted in him being expelled. Now before the Court are the following motions: 1) the University of Rochester's ("the University") motion to dismiss (Docket No. [#9]); 2) Sarah Hulbert's ("Hulbert")  motion to dismiss [#12]; 3) Hulbert's motion to seal [#12]; 4) Hulbert's motion for sanctions [#15]; 5) Plaintiff Dylan Routh's ("Plaintiff" or "Routh") cross-motion to amend [#19]; 6) Hulbert's second motion for sanctions [#23]; and 7) Routh's second cross-motion to amend [#34].

The applications are granted in part and denied in part as follows: Routh's motion to amend [#19] is denied as withdrawn; Routh's motion to amend [#34] is granted as to his defamation claim against Hulbert, but is otherwise denied as futile; the University's motion to dismiss [#9] is granted in its entirety, and the University is dismissed from the action; Hulbert's motion to dismiss [#12] is denied as to the defamation claim against her, but is otherwise granted; Hulbert's motions for sanctions [#15] [#23] are denied; and Hulbert's motion to seal [#12] is denied.

BACKGROUND

At the outset the Court must determine what facts it can consider.  It is of course well-settled that in resolving a 12(b)(6) motion, the Court is limited in that regard. *See, e.g.,Vasquez v. City of New York*, No. 10 Civ. 6277(LBS), 2012 WL 4377774 at *1 (S.D.N.Y.Sep. 24, 2012) ("[T]he [general] rule [is] that documents outside the pleadings cannot be considered in a 12(b)(6) motion.").  On a 12(b)(6) motion,

> the complaint is deemed to include any written instrument attached to it as
> an exhibit or any statements or documents incorporated in it by reference.

2

> Even where a document is not incorporated by reference, the court may
> nevertheless consider it where the complaint relies heavily upon its terms
> and effect, which renders the document integral to the complaint.

*Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-153 (2d Cir.2002) (citations omitted).

In considering whether a document is "integral" to the complaint, "a plaintiff's reliance on

the terms and effect of a document in drafting the complaint is a necessary prerequisite to

the court's consideration of the document on a dismissal motion; mere notice or

possession is not enough." *Id.*, 282 F.3d at 153 (citation and footnote omitted).

In this case, the Court finds that in addition to the Complaint (Docket No. [#1]) and

the proposed Amended Complaint (Docket No. [#34], Exhibit A), the Court may consider

the following documents in the record: 1) Dean Levy's letter to Routh, (Docket No. [#9-6]),

dated, September 22, 2011, informing him of the charges against him, since the letter is

incorporated by reference into the proposed pleading, *see*, Docket No. [#34], Exhibit A at

¶ 25; 2) the University of Rochester's ("the University") Standards of Student Conduct, *see*,

Docket No. [#9-3], since the pleading repeatedly refers to the document and  quotes it, in

connection with Routh's claim that the University violated its terms; 3) the University's

written decision expelling Routh, consisting of Dean Levy's letter dated September 30,

2011, (Docket No. [#9-7]), Routh's appeal dated October 14, 2011 (Docket No. [#26] at pp.

33-41), Routh's reply to his appeal dated November 8, 2011 (Docket No. [#26] at pp. 54-

61) and Dean Lennie's letter-decision denying the appeal, dated December 2, 2011

(Docket No. [#9-9]), since they are incorporated by reference and since Routh obviously

relied on them in drafting the pleading, *see*, [#34], Exhibit A at ¶ ¶ 45-49, 76-80, 82;[1] and 4) Dean Lennie's email to Routh dated November 1, 2011, concerning Routh's complaint of gender discrimination (Docket No. [#9-8] at p. 2), and Paul Burgett's decision denying Routh's gender discrimination complaint (Docket No. [#9-10]), since the documents are incorporated by reference and since Routh obviously possessed them and relied on them in drafting the proposed amended pleading, *see*, docket no. [#34-2] at ¶ ¶ 26-30, 88, 94, 96. From these documents ("the record"), the Court will set forth the facts of the case.

Factual History

At all relevant times Routh and Hulbert were students enrolled at the University. Hulbert was employed by the University as a Resident Assistant ("RA"), and Hulbert's father was also an employee of the University. At all relevant times Routh and Hulbert were adults.

Prior to September 16, 2011, Routh had not been accused by anyone at the University of sexual misconduct. Routh did, however, have a record of certain disciplinary infractions at the University. Specifically, Routh, who admits to having had a drug addiction prior to the events at issue here, was cited for possessing drug paraphernalia and for violating the University's alcohol policy. Routh contends, though, that the latter infraction merely involved him possessing a shot glass that he purchased at the University bookstore. Routh was also cited for being in the University library after closing time and for having a wireless computer router in violation of University policy. Routh was also cited for possessing chairs belonging to the University, although he maintains that the University

---

[1] It is also apparent that these documents are integral to understanding the underlying administrative proceeding which Routh maintains was arbitrary and capricious.

had discarded them.  Lastly, Routh was cited for possessing a knife, which he contends he needed because he had previously been robbed at gunpoint in Rochester.

Between September 2008 and September 2011, Routh and Hulbert engaged in sexual activity with each other at the University.  Some of the sexual acts involved "bondage."  It is undisputed that all of the sexual activity prior to September 2010, and some of it thereafter, was consensual.  Routh maintains, though, that all of his and Hulbert's sexual activity was consensual.  Hulbert, however, as discussed further below, disagrees.

On or about September 16, 2011, Routh informed Hulbert that he was no longer interested in having sexual activity with her.  As of that date, Hulbert had never made any complaints about Routh to the University.  On September 19, 2011, Hulbert filed a complaint against Routh with the University, accusing him of committing sexual acts against her without her consent, and otherwise assaulting her, during the previous year.  In that regard, Hulbert submitted a five-page written statement, which is not part of the record, in which she described the alleged assaults.  Routh maintains that Hulbert's statement accused him of acts involving strangulation, rape and forcible imprisonment.

On September 20, 2011, the University notified Routh that he was summarily suspended and had to leave the campus.  On September 22, 2011, Morgan Levy ("Levy"), a Dean at the University, sent Routh a letter which stated, in pertinent part:

> Dear Mr. Routh,
>
> I received a report containing allegations that you have physically, sexually and emotionally abused University of Rochester student Sarah Hulbert on repeated occasions beginning September 2010 and continuing until the present time.  Specifically the report alleges that at various times you had

anal and vaginal sexual intercourse with Sarah without her consent, hit her, burned her, whipped her, strangled her and detained her against her will. The full details of these allegations are included in the case file which will be made available for you to review.  As a result of this report you have been charged by the University with allegedly violating the Standards of Student Conduct, Section VI, item(s):

**5(a) Disorderly conduct including: fighting, threats, assault, attempted assault, harassment, or other actual or attempted conduct which threatens the health or safety of yourself or another.**

**11. Sexual harassment, racial harassment, or any other forms of illegal discrimination.**

**12. Sexual misconduct or assault, including any form of unwanted sexual contact.  'Unwanted' means against a person's wishes or without consent, including those instances in which the individual is unable to give consent because of unconsciousness, sleep, impairment, or intoxication due to alcohol or other drugs.**

I am providing official notification that a hearing has been scheduled to determine whether or not you are responsible for violating these policies. The hearing will be held on Thursday, September 29th, at 9AM in Wilson Commons 510.  (*This location is subject to change.  If a change of location is necessary you will be notified prior to the hearing.*)

You are invited to have a University community member as an advisor to assist you during the hearing, as long as this person is not an attorney.  I sent you a list of specially trained advisors via e-mail yesterday and would encourage you to use one of the individuals on that list if you plan to have an advisor.

If you plan to have any witnesses present, I will need their names, telephone numbers, and addresses by 4:00 p.m. on Tuesday, September 27th, 2011. Prior to the time of the hearing, I highly recommend that you read the Standards of Student Conduct regarding procedures, policies, conduct regulations, and student rights.  A copy of the Standards of Student Conduct

can be found at the following link: http://
www.rochester/edu/college/dos/conduct/

The file containing all pertinent case documentation will also be available for
your review.  Typically, students review this file in the Center for Student
Conflict Management during normal business hours (9 AM-5PM).  It is my
understanding that you would prefer not to come to campus to review the file.
I was able to arrange to have members of our Security office meet you at an
off campus location and sit with you while you review the documents if you
would prefer.  You may be accompanied by your attorney or your parent(s)
for the purpose of this review.

If you would like to arrange a pre-hearing conference with me, please contact
the Office of the Dean of Students at 275-4085 to arrange a time.  The pre-
hearing conference is an opportunity for you to ask any questions or
concerns that you may have about the hearing process prior to the hearing.

In the meantime, please feel free to call me at 275-4085 or e-mail me at
mlevy@admin.rochester.edu should you have any immediate questions or
concerns.

Sincerely, Morgan Levy

Docket No. [#9-6] (emphasis in original).

Upon receiving this notice, Routh informed Levy that he wanted to file "a cross-
complaint" against Hulbert, "based upon her purported knowledge of the disciplinary
infractions allegedly committed by [himself] that she failed to promptly report to campus
authorities, as required of her by the Standards of Student Conduct." Proposed Amended
Complaint [#34-2] at ¶ 26.  On this point, Routh maintained that a student's failure to report
another student's misconduct was itself a violation of the Standards of Student Conduct,
for which Hulbert was liable.  Alternatively, Routh indicated that he wanted to file "a cross-
complaint" against Hulbert because she filed her complaint against him in retaliation for

him ending their relationship, which was a form of harassment.  However, Levy told Routh that he could not file "a cross-complaint."  Levy informed Routh, though, that he could file a separate complaint against Hulbert.  Routh nevertheless accused Levy of gender discrimination, for preventing him from filing a cross-complaint.

Routh also complained to the University that the "notice of what disciplinary infractions with which he was being charged" lacked the specificity required by "the University's code of student conduct." Proposed Amended Complaint [#34-2] at ¶ 31.  In that regard, Routh appears to be alleging that Levy's letter dated September 22, 2011, did not conform to the University's Standards of Student Conduct.  According to Routh, the University's Counsel, Richard Crummins ("Crummins"), responded to his criticism by stating, " Let me say first that you have a valid point about the specificity of the charge letter.  We can definitely improve how those are written." *Id*. at ¶ 33.  The proposed amended pleading contends that "no further specification of the charges was provided to [Routh]," but it does not dispute Levy's statement, in her September 22, 2011, letter, that the entire case file, containing "all pertinent case documentation," was available for Routh's review prior to the hearing.  Moreover, Routh admits that he was permitted to review the entire case file prior to the hearing, though he complains that he was not permitted to make copies of Hulbert's complaint. *See*, Docket No. [#26] at p. 35, appeal p. 3.

On September 29, 2011, a disciplinary hearing was conducted before three University administrators: Joellen Kuhl ("Kuhl"), Assistant Finance and Operations Officer, Stephanie Beetle ("Beetle"), Senior Student Advisor and Chris Apple ("Apple"), Men's Soccer Head Coach. Proposed Amended Complaint [#34-2] at ¶ 35.  Routh was permitted to have a non-attorney advisor at the hearing, who could answer his procedural questions,

but who was not otherwise permitted to speak.  The hearing officers considered a written statement from Hulbert, in which she indicated, in pertinent part, that Routh had sex with her against her will on several occasions, bound her and restrained her against her will, and hit, bit, whipped and burned her.[2]  For example, Hulbert's statement indicated that in September, 2010, Routh continued having anal sex with her after she told him to stop by using a pre-arranged "safety phrase."  Hulbert also indicated that in November, 2010, Routh "raped" her and forced a "bubble wand" into her anus.  Hulbert further indicated that on another occasion, while she was sleeping, Routh attempted to have anal sex with her, and when she woke up and resisted he attempted to smother her, sat on her and hit her, leaving bruises.  Hulbert indicated that on another occasion, Routh gagged her by putting underwear in her mouth and duct tape around her head, and that on another occasion he handcuffed her without her consent and left her alone and restrained for several hours.

Routh submitted his own written statement, denying Hulbert's accusations. *See*, Proposed Amended Complaint [#34-2] at ¶ 42 (Indicating that he submitted a written statement to the hearing officers in which he "denied committing any acts with [Hulbert] which would constitute a violation of the University's disciplinary rules and, specifically, denied having any non-consensual interactions with [her].").  That is, Routh denied that the events about which Hulbert complained were non-consensual.

Routh and Hulbert testified at the hearing.  In Hulbert's testimony,[3] she reiterated the allegations in her written statement.  Routh maintains that such testimony was false.

---

[2]The Court does not have Hulbert's statement, and it accordingly relies on the proposed pleading's description of the statement.

[3]The Court does not have a transcript of the hearing testimony, and it accordingly relies on the proposed pleading's description of the testimony.

Routh also testified at the hearing, and again "denied having any non-consensual interactions with [Hulbert]." Proposed Amended Complaint [#34-2] at ¶ 42. Routh contends that Hulbert admitted at the hearing both that she had never complained about Routh to any University official prior to September, 2011, and that "as late as December, 2010, none of the activities in which she engaged with [Routh] caused her any distress." *Id*. at ¶ ¶ 43-44.

Following the hearing, on September 30, 2011, the University notified Routh that it found him guilty of violating two sections of the Standards of Student Conduct, and that it was expelling him from the University. Specifically, by letter dated September 30, 2011, Levy stated:

Dear Mr. Routh,

On September 29th, 2011 an administrative hearing was held for the purpose of resolving your alleged violations of the University of Rochester Standards of Student Counduct. After careful consideration of all the information available at the hearing, the administrative hearing board has found you responsible for engaging in the following behavior(s) prohibited by the University of Rochester:

12. Sexual misconduct or assault, including any form of unwanted sexual contact. "Unwanted means against a person's wishes or without consent, including those instances in which the individual is unable to give consent because of unconsciousness, sleep, impairment, or intoxication due to alcohol or other drugs.

5(a). Disorderly conduct including: fighting, threats, assault, attempted assault, harassment, or other actual or attempted conduct which threatens the health or safety or yourself or another.

Due to the violent nature of the incidents for which this hearing was convened and your extensive prior disciplinary history you are now expelled

from the University of Rochester.  Expulsion is a permanent separation from the University, meaning that you may not apply for readmission to any program.  This expulsion from the University of Rochester is effective as of 12AM on Friday, September 30th, 2011.

You will continue to be prohibited from entering or remaining on the grounds of the University of Rochester River Campus without the expressed [sic] permission from myself and/or Security.  Please note that if you are on campus without my permission for any purpose, including moving out of the Sigma Chi house, you will be arrested by Rochester Police for trespassing. I will work with you to make arrangements to remove your belongings from the Sigma Chi house.

You have the right to appeal this decision based on the following criteria:
* The sanction was not appropriate;
* New information exists that was not available at the time of the hearing and this information is sufficient to alter the decision; or
* An error occurred during the process that is substantive enough to alter the decision.

Your request for appeal, should you decide to prepare one, must be submitted to Peter Lennie, Senior Vice President and Dean of College Faculty, within seven (7) days from the date of this letter.  You may submit your letter to Dean Lennie via e-mail.  His e-mail address is lennie@rochester.edu.

Please contact my office at 585-275-4085 or via e-mail at mlevy@admin.rochester.edu if you have any questions.

Sincerely, Morgan Levy
Assistant Dean of Students
Director, Center for Student Conflict Management

Docket No. [#9-7] at pp. 2-3.

On October 14, 2011, Routh appealed Levy's decision to Dean Lennie. *See*, Docket No. [#26] at pp. 33-41.  Routh's eight-page appeal letter indicates that his expulsion was

in violation of the University's policies and was discriminatory toward him on the basis of gender. Routh argued that he was subjected to disciplinary action because he "refused to continue a sexual relationship with Sarah Hulbert, [his] accuser and a staff member of the University." *Id*. at p. 33. Routh maintained that because Hulbert was a Resident Advisor, she had a duty to inform him that his behavior was violating the University's policies.

Routh also contended that the charges against him failed to comply with the University's policies, because they were not sufficiently detailed, and in that regard he stated, in pertinent part:

> Sarah Hulbert and I had a sexual relationship which spanned two years, and the allegations in the charge letter spanned an entire year, stating that on 'repeated occasions beginning in September 2010 and continuing until the present time' I undertook various actions. . . . In an e-mail dated September 23, 2011, your General Counsel, Richard Crummins, acknowledged that this was a 'valid point,' that more specificity would be provided in the file material I would be allowed to see before the hearing, and offered to change the hearing date so that I cold have a 'full seven days from adequate notice' of the charges. However, while I was allowed to see some documents, I was not allowed to have any copies thereof.
>
> ***
>
> The result letter I received [Levy's decision] provides no further specificity. All it cites is the two policies I was found to have violated, 5(a) and 12. It does not tell me what conduct the hearing board found to have been proven by a preponderance of the evidence that violated those policies.
>
> At the moment, I have nothing in writing from the University of Rochester stating what specific conduct I undertook that constitutes an infraction. I have made assumptions based on statements made to me by Dean Levy, the panel, and e-mails from Counsel Crummins, and I will detail those assumptions as I respond to the specific allegations. If I am incorrect,

however, I request that I be given notice in writing regarding what specific conduct is at issue so that I may prepare an appropriate appeal.

*Id*.   Routh indicated that he understood the University's finding that he had violated Principle 12, "sexual misconduct or assault," to be based on Hulbert's claim that he had muffled/gagged her during sex, and thereby prevented her from being able to express or withdraw her consent.   On this point, Routh indicated that, "Dean Levy informed me that the panel concluded that the times I muffled or gagged Sarah Hulbert rendered her unable to give explicit consent and that justified the finding." *Id*., Appeal at p. 4.

Routh argued that such finding was unfair, because he did not have notice that such activity was part of the charge.   As previously discussed, though, Routh admits that in both Hulbert's written statement and in her testimony, she alleged that he had placed underwear in her mouth and placed duct-tape around her head. *See*, Proposed Amended Complaint [#34-2] at ¶ ¶ 39, 41.   In any event, Routh stated in his appeal that Hulbert frequently requested to be muffled/gagged, so that their sexual activity would not be overheard by others.   Routh further complained that he "had no notice that any temporary inability to talk during sexual activity would render such sexual activity to be non-consensual under Principle 12."   Routh stated that, if Principle 12 covered such activity, Hulbert had a duty, as an RA employed by the University, to tell him.

With regard to the University's finding that Routh had violated Principle 5, "disorderly conduct," Routh essentially argued that the sexual activity between himself and Hulbert was consensual, and that the hearing panel had no right to find him guilty of disorderly conduct simply because it may have been offended by the conduct:

> My understanding based on conversations with Dean Levy, questions and statements made by the panel, and e-mails from General Counsel Crummins, is that I was found in violation of this Principle because the nature of my sexual activity with Sarah Hulbert; that even though such sexual activity was fully consensual, by its nature the conduct was sufficiently upsetting to the panel that it justified my expulsion. The panel consistently asked me how my sexual activity with Sarah Hulbert comported with the University's moral code.

*See*, Docket No. [#26], appeal at p. 5. Routh argued that it was unfair for the University to penalize him for consensual adult sexual activity, since "students have no way of knowing what acts may some day be deemed unacceptable  . . . the reality is that my generation grew up in a much more sexually liberated society than many professors and administrators, and what you consider shocking is not what we consider shocking." *Id.*; *see also, id.* ("If the University is going to interpret the Principle in a manner that includes consensual sex, th[e]n it owes the students a duty to be honest about that fact and provide clear and articulated limits.").

Additionally, Routh argued in the appeal that it was discriminatory for the University to punish him and not Hulbert. *Id.*, Appeal at p. 6. On that point, Routh stated, in pertinent part:

> If the University is going to police consensual sexual conduct between students, then the University is obligated to punish both students equally under these policies. Deciding to punish only the male is the premier example of selective enforcement based on archaic assumptions that violates Title IX. Disciplining one student because he or she ended a consensual sexual relationship with another student – particularly [with] a staff member – is a premier example of retaliation that also violates Title IX.

*Id.*

Finally, as part of his appeal, Routh argued that the University overstated the severity of his past disciplinary record when considering what punishment to impose. In that regard, Routh admitted the existence of the disciplinary infractions, but offered explanations for them. Docket No. [#26], Appeal at p. 7.

On November 1, 2011, the University responded to Routh's allegation of discrimination against Levy. In that regard, on November 1, 2011, Peter Lennie ("Lennie"), University Vice President, sent an email to Routh which stated:

> Dear Mr. Routh,
>
> In your appeal letter to me you complained of discrimination based on your gender. I am writing to advise you that there is a University policy against discrimination and harassment and a process by which you have the right to make a formal internal complaint of discrimination. The policy and process can be found here: http://www.rochester.edu/working/hr/policies/pdfpolicies/106.pdf
>
> Assuming that your complaint would be chiefly against Dean Levy, the policy provides that I would be the Responsible Official to decide whether discrimination occurred in violation of that policy. The University's Office of Counsel would first appoint an investigator to find the facts and report them to me, and I would decide the matter. The investigator in this case would be an outside lawyer, chosen by the University.
>
> It is your choice entirely whether to invoke this separate complaint process. If you decide to do so while your appeal is pending, you may ask me to postpone deciding the appeal until I resolve the discrimination complaint, or you may ask that they continue in parallel. I will honor either request.
>
> Sincerely yours, Peter Lennie

Docket No. [#9-8] at p. 2.

After Routh filed his appeal of Levy's decision expelling him, Hulbert was permitted to file a written response, though it is not part of the record.  On November 8, 2011, Routh filed a reply/supplement to his appeal, responding to issues raised by Hulbert and reiterating the points in his appeal letter.  *See*, Docket No. [#26] at pp. 54-61 ("I have received and reviewed Sarah Hulbert's response to my appeal.").  Routh indicated that since he had not been told otherwise, it was "established between the parties" that he was found guilty of violating Principle 12 based on "gagging/muffling" Hulbert during sex.  Routh indicated that Hulbert liked being gagged and choked, but not suffocated. *Id*., Reply at p. 3 ("From what I can recall, in terms of suffocation Sarah Hulbert stated in our texts that she did not like suffocation (which I did with a pillow), but that she did like choking.").  Routh stated that Hulbert generally did not object to being gagged with duct-tape, except for one occasion when the tape got in her hair.  Overall, Routh stated that Hulbert's "statements and conduct explicitly and implicitly consented to any muffling and/or gagging." *Id*.  Routh also reiterated his belief that Hulbert's charges against him were in retaliation for him breaking off their relationship, and that such retaliation was a violation of Title IX.  Routh stated that he "should have been allowed to file a complaint against Sarah Hulbert on [that] basis," and that Levy's "refusal to allow [him] to file such a complaint was discriminatory and in violation of Title IX." *Id*.  Routh did not explain, however, how Levy's decision not to allow him to file a cross-complaint in Hulbert's action was discriminatory in light of her instruction to him that he could file a separate complaint against Hulbert.[4]

---

[4]*See, e.g.*, Proposed Amended Complaint [#34-2] at ¶ 94 ("[T]he University refused to allow Mr. Routh to file a *cross-complaint*.") (emphasis added).

16

With regard to Principle 5(a), "disorderly conduct," Routh's reply reiterated that he and Hulbert

> had an experimental sexual relationship - evidenced by the fact that we adopted the safe words of "bluebery pancakes." In our interaction,"no" did not mean "no," "blueberry pancakes meant "no."[5] Hulbert knew this and explicitly consented to it both verbally and in writing. . . . The vast majority of our conduct was not, or at least I do not believe it was, all that shocking under contemporary standards.

*Id*., Reply at p. 5. Routh stated his belief that one purpose "of attending a liberal arts university was to be able to experiment - academically, socially and even sexually," and that the University had never informed him that he could be sanctioned for such experimentation.

On December 2, 2011, Lennie notified Routh that he was denying the appeal and affirming Levy's decision expelling him. Lennie's letter-decision stated, in pertinent part:

> Dear Mr. Routh,
>
> I have decided to uphold the decision by Dean Levy to expel you from the University. I have reviewed the written materials presented to the board, the hearing recording, and your and Ms. Hulbert's letters to me. Given the evidence that you engaged in harmful conduct that significantly threatened the health and safety of another student, and taking account of your prior disciplinary history, I am convinced that the sanction was appropriate.
>
> I also did not find any defects in the disciplinary process that was followed. On the basis of the materials you had the opportunity to review

---

[5]Hulbert, though, told the University that on multiple occasions she in fact uttered the "safety words," but Routh ignored her and continued the objectionable conduct. *See*, Proposed Amended Complaint [#34-2] at ¶ ¶ 39, 41.

and your participation in the hearing, you had full notice of the nature of
the charges and evidence, and an opportunity to present your side.

You have maintained that Ms. Hulbert should also have been charged
with violating the student conduct code and that Dean Levy's failure to do
that constituted discrimination based on your gender.  I found no evidence
that Dean Levy's exercise of her discretion in this regard was motivated by
discrimination.

This letter concludes the appeal process.

Sincerely yours, Peter Lennie

Docket No. [#9-9] at p. 2.  Routh alleges, upon information and belief, that his expulsion

from the University will "effectively preclude[ him] from being accepted at any [other]

reputable college or university], since the University will share that information with any

such prospective college or university to which he may apply.

As previously discussed, Lennie notified Routh that he could file a formal

complaint against Levy, accusing her of discrimination for refusing to accept a "cross

complaint" against Hulbert as part of the same disciplinary action arising from Hulbert's

complaint.  Routh filed such a complaint, which the University investigated.  On January

31, 2012, Paul Burgett ("Burgett"), University Vice President, sent Routh a decision

denying the complaint, which states:

Dear Mr. Routh:

This letter constitutes my decision regarding your complaint under the
University of Rochester's Policy Against Discrimination and Harassment,
in which you claimed that Dean Morgan Levy discriminated against you
based on your gender by refusing to permit you to make a cross complaint
against Sarah Hulbert at the time disciplinary charges against you were
pending.

As you know, Jill Schultz [(an attorney appointed by the University)] investigated the complaint, and she has now rendered a report to me. Based on that report, a copy of which is enclosed, I find no factual basis to support your complaint.  There is persuasive evidence that Dean Levy made clear to you that you could make a complaint against Sarah Hulbert at any time (even now), but that it would not be addressed procedurally until charges against you had been resolved.  There is also no evidence that, even assuming your version of the facts as alleged in the complaint is true, Dean Levy acted with a discriminatory motive.  In my view, the evidence is convincing that she was following the disciplinary process in good faith without regard to your gender.

Under the University's policy you may appeal this decision within 15 business days.  If you decide to do so, you must do so in writing, to the University Provost, Ralph Kuncl.  He can be reached at email at Ralph.kuncl@rochester.edu

Sincerely, Paul Burgett

Docket No. [#9-10] at p. 2.  The Proposed Amended Complaint does not dispute Burgett's statement that Routh was able to file a separate disciplinary complaint against Hulbert.  Instead, it indicates only that Levy would not accept "a cross-complaint." *See*, Proposed Amended Complaint [#34-2] at ¶ ¶ 29-30.

Hulbert also pursued complaints against Routh with both the Monroe County Family Court and the Monroe County District Attorney, accusing him of rape and sexual abuse, based on the same allegations that she made to the University.  Hulbert later withdrew the Family Court Complaint, and a Monroe County Grand Jury "no billed" criminal charges against Routh.  However, prior to the termination of those proceedings Routh was required to retain counsel to defend against them.

19

Procedural History

On December 12, 2011, Routh and his mother, C. Renee Manes ("Manes"), commenced this action.  Routh and Manes were both purportedly proceeding *pro se*. However, it is undisputed that Manes is an attorney.  The Complaint [#1] purports to assert seventeen separate causes of action, fifteen of which are on behalf of Routh, and two of which are on behalf of Manes.  Those causes of action are as follows: 1) by Routh against the University and Hulbert for breach of contract; 2) by Routh against the University and Hulbert for breach of the covenant of good faith and fair dealing; 3) by Routh against the University and Hulbert for intentional infliction of emotional distress ("IIED"); 4) by Routh against the University for fraud; 5) by Routh against the University for "fraud in the inducement (negligent)"; 6) by Routh against the University under New York Article 78, on the basis that the University violated his federal constitutional rights under the First Amendment ("right to freedom of association") and the Fourteenth Amendment's Due Process and Equal Protection Clauses (right "to engage in consensual sexual adult relationships"); 7) by Routh against the University for discrimination on the basis of gender in violation of Title IX, 20 U.S.C. § 1681; 8) by Routh against the University for harassment on the basis of gender in violation of Title IX, 20 U.S.C. § 1681; 9) by Manes against the University for IIED; 10) by Routh against Hulbert for breach of contract; 11) by Routh against Hulbert for breach of the covenant of good faith and fair dealing; 12) by Routh against Hulbert for fraud; 13) by Routh against Hulbert for "fraud (negligent misrepresentation)"; 14) by Routh against Hulbert for intentional interference with prospective economic advantage; 15) by Routh against Hulbert for "defamation (libel and slander)"; 16) by Routh against Hulbert for IIED; and

17) by Manes against Hulbert for negligent infliction of emotional distress ("NIED").

Except for the seventh and eighth causes of action, the claims were alleged to arise

under New York State law.  The Complaint [#1] was signed and verified by both Routh

and Manes.

On February 1, 2012, the University filed a motion [#9] to dismiss the entire

Complaint for failure to state a claim.  On February 3, 2012, Hulbert also filed a motion

[#12] to dismiss the entire Complaint for failure to state a claim.  As part of the

application, Hulbert indicated that, although Manes was purportedly proceeding *pro se*,

she was an attorney admitted to practice in California.  Also as part of that application,

Hulbert requested that the Court seal paragraph 18 of the Complaint because it

contained a lurid and humiliating sexual allegation about her.

On February 9, 2012, Manes filed a responding affidavit [#13].  Manes indicated

that, although she is an attorney, she is not admitted to practice in New York State, and

therefore she was proceeding *pro se* until she and Routh could retain an attorney.

Manes also submitted documents pertaining to Routh's claim that the University had

discriminated against him.  Specifically, she submitted a fourteen-page document

entitled "Policy 106 Investigation:  Findings of Fact," concerning Routh's complaint that

the University had discriminated against him refusing to allow him to file a counter-

complaint against Hulbert.  The Court, however, has not considered that document as

part of this Decision and Order, since it does not appear that it can be considered on a

12(b)(6) motion, under the standards previously discussed.

On March 6, 2012, Hulbert filed a motion [#15] for sanctions against Manes

pursuant to Federal Rule 11(c) and 28 U.S.C. § 1927.  Hulbert argued, in part, that

Manes' negligent infliction of emotonal distress ("NIED") claim was frivolous[6] and appeared to have been filed as a sham claim so that Manes could appear in the action and represent her son, Routh.  Hulbert further contended that the document entitled "Policy 106 Investigation: Findings of Fact" contained additional lurid details about her, which Manes submitted to harass her.

On March 26, 2012, Manes and Routh filed a motion [#19] to amend the Complaint.  The Proposed First Amended Complaint purported to set forth eight causes of action, five of which were asserted against the University, and four of which were asserted against Hulbert.  The proposed amended claims were as follows: 1) by Routh against the University for gender discrimination and harassment in violation of Title IX; 2) by Routh against the University and Hulbert for breach of contract; 3) by Routh against the University under Article 78; 4) by Routh against the University for "fraud in the inducement (material omission)"; 5) by Routh and Manes against the University for intentional infliction of emotional distress; 6) by Routh against Hulbert for "defamation (libel and slander)"; 7) by Routh against Hulbert for intentional infliction of emotional distress; and 8) by Routh against Hulbert for intentional interference with existing contractual relations.

---

[6]Hulbert noted, for example, that the NIED claim lacks any allegation of physical injury, which is a requirement for such a claim under New York law. *See, e.g., Hecht v. Kaplan*, 221 A.D.2d 100, 105, 645 N.Y.S.2d 51, 54 (2d Dept. 1996) ("While physical injury is not a necessary component of a cause of action to recover damages for the negligent infliction of emotional distress, it must be premised upon a breach of duty owed directly to the plaintiff, which either endangered the plaintiff's physical safety or caused the plaintiff to fear for his or her own safety.") (citations omitted).

Plaintiffs stated that they were filing the proposed amended pleading because the motions to dismiss faulted the original pleading's lack of specificity.[7]  The Proposed First Amended Complaint contained additional explicit sexual material, such as an alleged verbatim transcript of a sexually explicit text exchange between Routh and Hulbert, and other sexually explicit allegations concerning Hulbert, apparently intended to show that she was a willing participant in the sexual activity. *See*, Proposed First Amended Complaint at ¶ ¶  14-15.   However, contrary to Routh and Manes' suggestion, the University did not allege that the Complaint lacked specificity regarding allegations of sexual conduct; to the contrary, the University specifically indicated that it was refraining from discussing the allegations of sexual abuse in detail out of concern for the students. Instead, the University indicated that the Complaint lacked factual allegations, *not pertaining to the sexual conduct*, to support the various causes of action.  For example, the University had argued that the Complaint failed to allege *fraud* with specificity.  Similarly, although Hulbert had argued that the Complaint was factually deficient in certain respects,[8] she had not contended that it was factually deficient with regard to allegations of sexual conduct.

---

[7]Manes and Routh essentially claimed that they were forced to plead the additional detail: "Defendants contend tha the Plaintiffs have failed to plead with particularity, or to demonstrate sufficient facts which entitle them to any relief in this matter[.]  . . .  Plaintiffs will therefore plead with as much specificity as possible in this First Amended Complaint and, where available, quote from the documentation available to Plaintiffs.  While some of the terminology will be explicit, Plaintiffs do not undertake such filings for the purpose of embarrassment or harassment, but instead to demonstrate that they have viable causes of action.  It is not the Plaintiffs who first decided to publicize the nature of the private, consensual sexual contact between Dylan Routh and Sarah Hulbert – it was Sarah Hulbert and the University of Rochester." Proposed First Amended Complaint at ¶ 10.

[8]For example, Hulbert alleged that the Complaint failed to adequately describe the alleged defamatory statements.

Plaintiffs also submitted a memorandum of law [#19] in support of the proposed amendment, and in opposition to the motions to dismiss. With regard to the motions to dismiss, Plaintiffs did not oppose the dismissal of the claims in the original Complaint [#1]. Instead, Plaintiffs argued only that the eight causes of action in the Proposed First Amended Complaint adequately stated claims.

On April 25, 2012, Manes filed a response [#20] to Hulbert's motion for sanctions. Essentially, Manes contended that Hulbert's charges against Routh, that she filed with the University, were "false and malicious," and that Defendants' "misconduct [was] actionable under any number of theories." Manes indicated that with the filing of the Proposed First Amended Complaint, she and Routh were "pleading certain claims with more specificity and withdrawing other claims." Docket No. [#20] at p. 3.[9] Manes contended, though, that the motion for sanctions should be denied because "the newly pled claims [were] factually and legally sound." *Id*.

On May 18, 2012, in response to Plaintiffs' motion to amend, Hulbert opposed the application and accused Plaintiffs of attempting to blackmail the Defendants if they

---

[9]Accordingly, any claims in the original Complaint [#1] that are not repeated in the Proposed First Amended Complaint are withdrawn and/or abandoned. *See, Volunteer Fire Ass'n of Tappan, Inc. v. County of Rockland*, No. 09–CV–4622 (CS), 2010 WL 4968247 at *7 (S.D.N.Y. Nov. 24, 2010) ("Ordinarily . . . when a plaintiff fails to address a defendant's arguments on a motion to dismiss a claim, the claim is deemed abandoned, and dismissal is warranted on that ground alone.") (citations omitted). Specifically, the following claims from the original Complaint are withdrawn/abandoned: The second cause of action by Routh against the University and Hulbert for breach of the covenant of good faith and fair dealing; the fourth cause of action by Routh against the University for intentional fraud; the tenth cause of action by Routh against Hulbert for breach of the alleged "sex contract"; the eleventh cause of action by Routh against Hulbert for breach of the sex contract's covenant of good faith and fair dealing; the twelfth cause of action by Routh against Hulbert for fraud; and the thirteenth cause of action by Routh against Hulbert for "fraud (negligent misrepresentation)."

did not agree to mediation.  Specifically, Hulbert stated that on March 21, 2012, Routh

sent defendants' attorneys an email which stated, in pertinent part:

> I am writing to inform you that I will shortly be filing a motion to amend my
> complaint against your clients to plead with more specificity.  My original
> pleading was vague, primarily at the urging of my mother who wishes to
> avoid embarrassment for all parties.  However, because you have
> complained about the lack of specificity on various charges, I will be
> getting very specific.
>
> In reviewing my records to allege specificity, I found the following
> facebook message communications which occurred between myself and
> Sarah Hulbert in November 2010[.] [Routh then sets forth the sexually
> explicit text, mentioned earlier, verbatim]
>
> ***
>
> I will be making these messages public in my amended complaint.  I am
> not asking you to consent to the filing of the amended complaint, I
> assume you will oppose.  However, because I had not previously made
> you aware of the existence of these messages, I am writing at the urging
> of my mother to give you one last chance to agree to mediate these
> issues before going public.
>
> Sarah Hulbert libeled and slandered me when she claimed I undertook
> any sexual activity against her consent.  The University has discriminated
> against me and violated its contractual obligations to treat me fairly.  I
> would simply pursue my rights in every appropriate forum, but I am being
> urged to suggest mediation one last time by my mother, in spite of your
> ridiculous attacks against her.
>
> So I am giving you that opportunity.  If I do not hear that you agree to
> mediation of all issues by the noon [sic] (pacific time) on Thursday, I will
> move forward with the filing of the amended complaint and making these
> messages public.  Sincerely, Dylan Routh.

Docket No. [#21], Exhibit A.

On March 22, 2012, Hulbert's attorney responded to Routh's email with a letter, that stated in pertinent part:

> The threats contained in you March 21, 2012 letter, to the effect that you will make public certain alleged sexual communications between yourself and our client, Ms. Hulbert, if she does not agree to participate in mediation, constitutes the crime of coercion under New York and quite possibly, federal laws.  We intend on filing a criminal complaint as a result.
>
> We also intend on supplementing our various motions to apprise the court of this threat, and to broaden our motion for sanctions to include a claim against you.   We will further supplement our motion to broaden the claim against your mother because, as you wrote, she encouraged and conspired with you to send the offending letter.
>
> You letter threat is outrageous and among the most offensive litigation tactics that I have seen.  There is no place for this conduct in the Courts, and we shall seek redress.

Docket No. [#21] at p. 11.  Routh nevertheless went ahead and included the sexually explicit information in the Proposed First Amended Complaint, as discussed earlier. Hulbert asked the Court to dismiss this action as a sanction for Plaintiffs' conduct. Hulbert also opposed the amendment on the grounds that it would be futile.

On May 18, 2012, the University filed its reply [#22] on its motion to dismiss and its  opposition to Plaintiffs' motion to amend.   The University argued, first, that its motion to dismiss should be granted insofar as Plaintiffs did not oppose it as to certain claims.  As for the proposed amended causes of action, the University contended that they failed to state claims for which relief could be granted. *See*, Docket No. [#22] at p.

10 ("By simply adding salacious facts to the previous allegations, plaintiffs do not address the fundamental deficiencies in their original pleadings.") (citations omitted).

On June 1, 2012, Hulbert filed a second motion [#23] for sanctions under Rule 11, against both Routh and Manes, on the grounds that they had "made threats against [Hulbert], thus committing the crime of coercion under the New York Penal Law, and engaged in a patter of harassment in this action."  Hulbert contended, for example, that Plaintiffs added the additional sexually explicit allegations about her in order to harass her, under the guise of responding to the motions to dismiss, and continued to pursue meritless claims.  Hulbert also reiterated the fact that Routh and Manes had threatened to reveal intimate details about her if she did not agree to mediation, and then revealed such details.

On July 12, 2012, Routh and Manes filed a response [#26] to Hulbert's second motion for sanctions, which also contained their reply concerning their motion to amend.  With regard to the motions for sanctions, Plaintiffs essentially maintained that Hulbert had lied about and defamed Routh, and that they were therefore entitled to include the aforementioned sexually explicit information in their papers.  Plaintiffs further maintained that the causes of action in their Proposed Amended Complaint were meritorious.

On August 3, 2012, Hulbert filed a reply [#27] regarding her second motion for sanctions.  Hulbert contended that in Plaintiffs' response to her second motion for sanctions, they had further harassed her, by setting for additional personal information about her.  Hulbert further maintained that regardless of whether Plaintiffs believed that

the information they included was true, it was unnecessary to this action and included for an improper purpose.

On December 13, 2012, the parties appeared before the Court for oral argument. The Court dismissed Manes from the action, and granted Routh until February 1, 2013, to retain an attorney.  The Court later granted Routh's request for an extension, until March 29, 2013, to retain an attorney.

In approximately April 2013, Routh informed the Court that he had retained an attorney, Jeffrey Wicks ("Wicks").  Wicks requested permission to "supplement" Routh's papers, and on April 22, 2013, the Court granted Wicks until May 16, 2013, to file and serve papers supplementing Routh's prior submissions. *See*, Order [#37].  The Court provided Defendants with an opportunity to respond, and indicated that it would thereafter issue a written decision. *Id*.

On May 16, 2013, Wicks filed a motion [#34] for leave to file an amended complaint.  The application indicated that Routh was withdrawing his prior motion to amend. See, Docket No. [#34-1] at ¶ 6.  The application further stated, with regard to the new proposed pleading prepared by Wicks, that "[t]o the extent the defendants' objections to the legal sufficiency of the original complaint had merit, the proposed amended complaint has been drafted so as to overcome such objections." *Id*. at ¶ 10. The proposed pleading purports to state the following five claims: 1) a claim against the University for breach of contract; 2)  a claim against the University under Article 78; 3) a claim against the University under Title IX; 4) a claim against Hulbert for defamation; 5) a claim against Hulbert for IIED.

Routh, who is a citizen of Oregon, maintains that the Court has federal question subject-matter jurisdiction over the Title IX claim, and diversity jurisdiction and/or supplemental jurisdiction over the remaining claims.  The Court interprets that statement to mean that it has the following types of subject-matter jurisdiction over the claims: Federal question jurisdiction over the Title IX claim; supplemental jurisdiction over the Article 78 claim, since money damages are not generally recoverable in an Article 78 proceeding;[10] and diversity jurisdiction over the remaining state-law claims for which Routh is seeking money damages.  Routh did not file a memorandum of law with the proposed pleading.[11]

On June 7, 2013, Hulbert filed an opposition [#35] to Routh's motion [#34].  Hulbert contends that the Court should deny Routh's application, based on his and Manes' misconduct in this action.  Hulbert also contends that the proposed amended claims lack merit.  Also on June 7, 2013, the University filed an opposition [#36] to

---

[10]*See, Parker v. Blauvelt Volunteer Fire Co., Inc.*, 93 N.Y.2d 343, 348, 712 N.E.2d 647, 650 (1999) (Money damages are recoverable in an Article 78 claim if they are "incidental to the primary relief sought.") In opposing Defendants' motions to dismiss, Routh contends that the Court has "supplemental jurisdiction" over the Article 78 claim. *See*, Docket No. [#38] at pp. 3-4.  In connection with the Article 78 claim, Routh is seeking "[a]n order reversing and annulling" the University's decision to expel him, along with $2 million in damages. *See*, Docket No. [#34-2] at pp. 20-21.  However, he does not indicate that the $2 million in damages being sought is incidental to the primary relief being sought.

[11]Routh has not opposed Defendants' motions to dismiss except to seek to file an amended complaint, and he has now withdrawn his prior motion to amend [#19] and replaced it with the new proposed amended complaint [#34-2].  In other words, there were fifteen claims in the original complaint [#1], defendants moved to dismiss all of them, and Routh has responded by claiming only that the five claims contained in [#34-2] have merit.  Any claims not contained in the latest proposed pleading [#34-2] are deemed abandoned and are dismissed with prejudice. *See, Allen v. N.Y.C. Housing Authority*, No. 10 Civ. 168(CM)(DF), 2012 WL 4794590 at *4 (S.D.N.Y. Sep. 11, 2012) ("A party may voluntarily drop claims by choosing not to include them in a proposed amended pleading. In such a circumstance, it is appropriate for the Court to dismiss the abandoned claims with prejudice.") (citations omitted).

Routh's motion [#34].  The University maintains that the proposed amended claims lack merit.

On July 31, 2013, Routh filed a reply [#38] concerning his motion to amend [#34].  With regard to his cause of action for breach of contract against the University, Routh contends that he has sufficiently pleaded such claim for the following reason:

> In the present case, the plaintiff has alleged that the defendant University had a code of conduct which established a requirement that any disciplinary charges be specific and that the charges against him failed to conform to the University's code of conduct (Docket #34 , Exhibit A, ¶ 31). In addition, the plaintiff has alleged that the defendant University's own counsel admitted this failure, stating, in response to the plaintiff's claim that he had inadequate notice of the charges against him, "[y]ou have a valid point about the specificity of the charge letter.  We can definitely improve on how those are written. (Docket #34, Exhibit A, ¶ 33).  Despite this written admission, the defendant University refused to provide further specification of the disciplinary charges against the plaintiff. (Docket #34, Exhibit A, ¶ 33).

Pl. Reply Memo [#38] at p. 3.   Accordingly, Routh maintains that the University breached its contract with him by failing to give him notice of the charges against him as required by the University's code of conduct.

With regard to his claim under Article 78 against the University, Routh contends that such claim may be brought in federal court, contrary to Defendants' arguments to the contrary.

With regard to his claim under Title IX against the University, Routh contends that the University "discriminated against him on account of his gender by selectively prosecuting him for alleged disciplinary infractions." Pl. Reply Memo [#38] at p. 4.  Routh expands on that point by stating that "the University violated Title IX by prosecuting him

for a violation of the University's code of conduct while simultaneously insulating Ms. Hulbert from a complaint by the plaintiff for engaging in the same conduct for which he was being charged." *Id*. at p. 5.  Routh acknowledges that the University is maintaining that he could have filed a separate complaint against Hulbert, but not a cross-complaint, since there is no provision in the Standards of Student Conduct for filing a cross-complaint. *Id*.  Routh contends, though, that the Court cannot consider that point on a 12(b)(6) motion.

With regard to his claim for defamation against Hulbert, Routh maintains that the proposed pleading "alleges that the defendant Hulbert gave false written and oral statements that [he] raped her, sexually and otherwise assaulted her and/or engaged in activities without her consent." Pl. Reply Memo [#38] at p. 6.  Routh disputes Defendants' contention that he suffered no damages, and argues that to the extent the University relied on Hulbert's statements in deciding to expel him, he suffered damages from her defamation.  Alternatively, Routh contends that he has pleaded defamation *per se*, since Hulbert falsely accused him of serious sexual crimes.

Lastly, with regard to his claim against Hulbert for intentional infliction of emotional distress, Routh contends that the proposed pleading adequately pleads that she engaged in extreme and outrageous conduct.  Specifically, he maintains, the pleading alleges that Hulbert falsely accused him of rape to the University, to police and to Family Court, and that she sought an order of protection against him even though he had moved back to Oregon.

DISCUSSION

Defendants have moved to dismiss the complaint for failure to state a claim, and

Plaintiff has cross-moved for leave to amend.  Courts must freely give leave to amend

pleadings "when justice so requires." FRCP 15(a)(2).  Nevertheless, a "district court has

discretion to deny leave for good reason, including futility, bad faith, undue delay, or

undue prejudice to the opposing party." *Holmes v. Grubman*, 568 F.3d 329, 334 (2d

Cir.2009) (internal quotation marks omitted). "A proposed amendment to a pleading

would be futile if it could not withstand a motion to dismiss pursuant to Rule 12(b) (6)."

*Martin v. Dickson*, No. 03–7917, 100 Fed.Appx. 14, 16, 2004 WL 1205185 at *2 (2d Cir.

Jun.2, 2004) (unpublished).  The standard for such motions to dismiss is well settled:

> Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain
> statement of the claim showing that the pleader is entitled to relief, in
> order to give the defendant fair notice of what the claim is and the
> grounds upon which it rests. While a complaint attacked by a Rule
> 12(b)(6) motion to dismiss does not need detailed factual allegations, a
> plaintiff's obligation to provide the grounds of his entitlement to relief
> requires more than labels and conclusions, and a formulaic recitation of
> the elements of a cause of action will not do. Factual allegations must be
> enough to raise a right to relief above the speculative level, on the
> assumption that all the allegations in the complaint are true (even if
> doubtful in fact).

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964–65, 167 L.Ed.2d

929 (2007); *see also, ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98

(2d Cir.2007) ("To survive dismissal, the plaintiff must provide the grounds upon which

his claim rests through factual allegations sufficient 'to raise a right to relief above the

speculative level.' ") (*quoting Bell Atl. Corp. v. Twombly* ) (footnote omitted).

When applying this "plausibility standard," the Court is guided by "two working

principles":

> First, although a court must accept as true all of the allegations contained
> in a complaint,[12] that tenet is inapplicable to legal conclusions, and
> threadbare recitals of the elements of a cause of action, supported by
> mere conclusory statements, do not suffice.  Second, only a complaint
> that states a plausible claim for relief survives a motion to dismiss, and
> determining whether a complaint states a plausible claim for relief will be a
> context-specific task that requires the reviewing court to draw on its
> judicial experience and common sense.

*Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citations and internal quotation marks

omitted).  "[W]here the well-pleaded facts do not permit the court to infer more than the

mere possibility of misconduct, the complaint has alleged—but it has not shown—that

the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S.Ct. 1937,

1950 (2009) (citation omitted).  "The application of this 'plausibility' standard to

particular cases is 'context-specific,' and requires assessing the allegations of the

complaint as a whole." *Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Medical

Centers Retirement Plan v. Morgan Stanley Inv. Management Inc.*,  712 F.3d 705, 719

(2d Cir. 2013) (citation and internal quotation marks omitted).

<u>Breach of Contract</u>

Routh contends that he had an implied contract with the University, which the

University breached by failing to give him notice of the charges against him as required

by the University's own policies. *See*, Docket No. [#38] at p. 3 ("Contrary to the

---

[12]The Court must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party. *Burnette v. Carothers*, 192 F.3d 52, 56 (2d Cir.1999), cert. den. 531 U.S. 1052, 121 S.Ct. 657 (2000).

defendant University's argument, the Plaintiff has clearly set forth the terms of the contract and the specific breach by the University.").

A student may sue his college or university for breach of an implied contract in certain situations.

> Under New York law, an implied contract is formed when a university accepts a student for enrollment: if the student complies with the terms prescribed by the university and completes the required courses, the university must award him a degree.  The terms of the implied contract are contained in the university's bulletins, circulars and regulations made available to the student.  Implicit in the contract is the requirement that the institution act in good faith in its dealing with its students.  At the same time, the student must fulfill his end of the bargain by satisfying the university's academic requirements and complying with its procedures.

*Papelino v. Albany College of Pharmacy of Union University*, 633 F.3d 81, 93 (2d Cir. 2011) (citations and internal quotation marks omitted).  Significantly, though, "when a disciplinary dispute arises between the student and the institution, judicial review of the institution's actions is limited to whether the institution acted arbitrarily or whether it substantially complied with its own rules and regulations." *Jones v. Trustees of Union College*, 92 A.D.3d 997, 998-999, 937 N.Y.S.2d 475, 477 (3d Dept. 2012).  Accordingly, the issue as to this cause of action is whether Routh has plausibly pleaded that, with regard to the notice that the University gave him regarding his disciplinary charges, the University acted arbitrarily or failed to substantially comply with its own rules and regulations.

The proposed amended pleading [#34-2] does not specify a particular rule or procedure which the University supposedly violated in this regard.[13]  Such a failure has been held to warrant the dismissal of this type of contract claim.  *See, Jones v. Trustees of Union College*, 92 A.D.3d at 999, 937 N.Y.S.2d at 477 ("Supreme Court properly determined that plaintiff's failure to identify the specific terms of the implied contract that he claims were violated by the College—such as an internal rule, regulation or code—is fatal to his claim.") (citation omitted).

Even assuming *arguendo* that the proposed pleading identified a specific rule, the Court would nonetheless find that this claim lacked merit.  In that regard, the Court has reviewed the Standards of Student Conduct, and finds that the following provisions are relevant:

> Any student charged with misconduct will be treated in accordance with the basic standards of fundamental fairness which include timely notification of charges, fair and impartial hearings, and the right of appeal. (Standards of Student Conduct at p. 6).
>
> ***
>
> Fundamental fairness for conduct hearings at the University consists of the following standards:
>
> 1. All charges must be in writing and presented to the respondent and victim at the time of notification of the hearing.
>
> 2. Charges shall be reasonably specific as to the nature, time, and place of the alleged infraction.

---

[13]See, Proposed Amended Complaint [#34-2] at ¶ ¶ 1-68.  Neither does the original Complaint [#1].  Routh previously argued that the First Proposed Amended Complaint contained such allegations, *see*, Docket No. [#26] at pp. 21-22,  but he withdrew that proposed pleading.

> 3. The respondent and victim shall be informed of his or her rights in his or her preliminary meeting with the judicial officer.
>
> ***
>
> 5. The respondent and victim shall be afforded at least seven days' notice of the hearing in writing.
>
> ***
>
> 12. Relevant reports, documents and other evidence may be reviewed by the respondent and victim in the Office of the Dean of Students prior to the hearing.  Copies of any such material may not, however, leave the office.

(Standards of Student Conduct at p. 4.).

In his appeal of Levy's decision expelling him from the University, Routh alluded to the alleged lack of specificity for which he now sues, stating:

> Sarah Hulbert and I had a sexual relationship which spanned two years, and the allegations in the charge letter spanned an entire year, stating that on 'repeated occasions beginning in September 2010 and continuing until the present time' I undertook various actions.

Docket No. [#26] at pp. 34-35.  The reasonable inference to be drawn from this statement is that the charge did not specify exactly when the alleged misconduct took place.  However, Hulbert's complaint provided approximate dates on which Routh allegedly mistreated her.  For example, Hulbert's complaint indicated that while at the University, in "September, 2010," Routh continued having anal sex with her after she told him to stop by using a pre-arranged "safety phrase," and that in "November, 2010," Routh raped her and forced a bubble wand into her anus. *See also*, Proposed Amended Complaint [#34-2] at ¶ 39 (summarizing Hulbert's specific allegations). Such allegations are "reasonably specific as to the nature, time, and place of the alleged infraction[s]," and therefore comply with the Standards of Student Conduct.  This is

36

particularly so where, as here, Routh and Hulbert do not really dispute that most of the sexual activity actually occurred, but dispute only whether some of those acts were non-consensual.

Nonetheless, Routh insists that the University admitted that it violated its own policy, based on Crummins' statement that the University could "definitely improve" how it wrote its disciplinary charges. *See*, Proposed Amended Complaint [#34-2] at ¶ 32. However, the Court disagrees.  The pertinent policy required only that Routh receive "reasonably specific" notice of the charges against him.  As already discussed, he received such notice.  It is not reasonable to interpret Crummins' statement that the University's *notices in general* could be improved as an admission that the University violated its own policies in his case.  Furthermore, Crummins' statement referred only to the initial letter that Routh received from Levy.  After that, Routh was permitted to review the entire case file including all of the evidence against him.  He was also permitted to meet with Levy prior to the hearing and ask any questions that he had. Overall, the pleading and other documents which the Court is considering on this motion clearly indicate that Routh was given reasonably specific notice of the charges against him.

To the extent that Routh is attempting to maintain that he did not receive sufficient notice of the grounds for the panel's decision, the Court similarly finds that his argument lacks merit.[14]  At the outset, Routh has not indicated a particular policy or provision requiring the panel to provide him with any level of detail or explanation in its

---

[14]The proposed pleading does not specifically assert this claim. See, Proposed Amended Complaint [#34-2] at ¶ ¶ 1-68.

decision, nor does the Court find any in the Standards of Student Conduct.  Moreover, in his appeal letters  Routh stated his understanding of the grounds upon which the University had found that he violated Principles 5(a) and 12.  Routh indicated that his understanding of the basis for the panel's ruling was gained through the combined effects of the hearing, the decision letter, conversations with Levy and emails from Crummins. *See*, Docket No. [#26] at p. 35  ("I have made assumptions based on statements made to me by Dean Levy, the panel, and e-mails from Counsel Crummins.").  The University did not contradict Routh's understanding on those points, and he subsequently declared that his description of the grounds for the ruling was "established between the parties."  Accordingly, Routh had "reasonably specific" notice of the grounds for the panel's decision.[15]

In summary, the proposed pleading makes conclusory assertions that the University failed to give Routh proper notice.  However, the actual factual allegations in the pleading contradict that claim.  Accordingly, the Court finds that Routh's cause of action for breach of contract fails to state a claim.

Article 78

The University maintains that this Court lacks subject-matter jurisdiction over Routh's Article 78 claim.  In support of its position, the University cites cases such as

---

[15] *See, Schwarzmueller v. State Univ. of New York at Potsdam*, 105 A.D.3d 1117, 1118-1119, 962 N.Y.S.2d 752, 755 (3d Dept. 2013)  ("[A]lthough petitioner was not served with the notice of charges at the time that he was removed from the campus, the Coordinator of Student Conduct and Community Standards promptly contacted petitioner regarding the incident and served the charges later the same morning. In light of the timing of petitioner's release by the police and the exigent circumstances requiring immediate action to preserve campus safety, respondents substantially complied with the rule regarding service of the notice of the charges and the imposition of an interim suspension.  Similarly, while petitioner argues that he was not informed of his right under the Code to discuss the circumstances underlying his interim suspension with the Vice President of Student Affairs, he was provided with an opportunity to discuss those circumstances with Morris on the day after the incident occurred.") (citation omitted).

*Lucchese v. Carboni*, 22 F.Supp.2d 256, 258 (S.D.N.Y. 1998), *McNamara v. Kaye*, 360 Fed.Appx. 177, 226 (2d Cir. 2009) and *Nat'l Fuel Gas Supply Corp. v. Town of Wales*, 904 F.Supp.2d 324 (W.D.N.Y. 2012).  Those cases, though, do not indicate that the Court lacks subject matter jurisdiction, but rather, they involve federal courts declining to exercise supplemental jurisdiction over Article 78 claims pursuant to 28 U.S.C. § 1367(c).  Moreover, the Second Circuit Court of Appeals has not indicated that district courts necessarily lack subject-matter jurisdiction over Article 78 claims. *See, Carver v. Nassau County Interim Finance Authority*, 730 F.3d 150, 2013 WL 5289050 at *4 (2d Cir. 2013) (Declining to decide whether Article 78 itself deprives federal courts of subject matter jurisdiction).  Nevertheless, the Court agrees with the "essentially unanimous position of the New York district courts" that it is appropriate to decline supplemental jurisdiction over Article 78 claims in most cases. *See, New York State Corectional Officers & Police Benev. Ass'n, Inc. v. New York*, 911 F.Supp.2d 111, 131-133 (N.D.N.Y. 2012) (explaining reasons for declining to exercise jurisdiction) (citations omitted); *see also, National Fuel Gas Supply Corp. v. Town of Wales*, 904 F.Supp.2d at 336 ("Section 1367 provides that a court 'may decline to exercise supplemental jurisdiction' if there are 'compelling reasons for declining jurisdiction.' The very nature of an Article 78 proceeding presents such compelling reasons.") (*quoting Morningside Supermarket Corp. v. New York State Dept. of Health*, 432 F.Supp.2d 334, 347 (S.D.N.Y. 2006)).  Accordingly, the Court declines to exercise supplemental jurisdiction over this claim pursuant to 28 U.S.C. § 1367(c)(4), and dismisses the claim without prejudice.

Title IX

Routh next maintains that the University discriminated against him on the basis

of his gender, in violation of Title IX.  The general legal principles concerning such

claims are clear:

> Title IX provides, in relevant part, that "[n]o person in the United States
> shall, on the basis of sex, be excluded from participation in, be denied the
> benefits of, or be subjected to discrimination under any education
> program or activity receiving Federal financial assistance." 20 U.S.C. §
> 1681(a). Title IX is enforceable through an implied right of action. *Franklin
> v. Gwinnett County Pub. Sch.*, 503 U.S. 60, 65, 112 S.Ct. 1028, 117
> L.Ed.2d 208 (1992); *Cannon v. Univ. of Chicago*, 441 U.S. 677, 99 S.Ct.
> 1946, 60 L.Ed.2d 560 (1979).
>
> ***
>
> "To prove a prima facie case[16] under Title IX, Plaintiff must simply show
> that he was excluded from participation, denied the benefits of, or
> subjected to discrimination in an educational program, that the program
> receives federal assistance, and that the exclusion was on the basis of his
> sex." *Bucklen v. Rensselaer Polytechnic Inst.*, 166 F.Supp.2d 721, 726
> (N.D.N.Y.2001); *see also Murray v. New York Univ. College of Dentistry*,
> No. 93 Civ. 8771, 1994 U.S. Dist. LEXIS 13880, at *13, 1994 WL 533411
> (S.D.N.Y. Sept. 29, 1994).

*Vaughan v. Vermont Law School, Inc.*, No. 2:10–cv–276, 2011 WL 3421521 at *4 (D.Vt.

Aug. 4, 2011), *reconsideration denied*, 2011 WL 4036629 (D.Vt. Sep. 12, 2011),

*affirmed*, 489 Fed.Appx. 505 (2d Cir. Dec. 7, 2012) (unpublished).

Here, the proposed amended pleading [#34-2]  asserts that the University

discriminated against Routh by refusing to allow him to file a "cross-complaint" against

Hulbert, which resulted in him being "selectively prosecuted," in effect.  The proposed

---

[16]Obviously, a plaintiff is not required to plead a prima facie case to survive a motion to dismiss.

pleading indicates that such decision was discriminatory, because it prevented Hulbert from being disciplined for engaging "in the same violations" for which he was disciplined. Docket No. [#34-2] at ¶ 93.  The pleading further contends, "upon information and belief," that the University has never previously brought disciplinary charges against a student for "consensual sexual conduct."[17]

However, as alluded to earlier, Routh's mantra-like assertion that he was prevented from filing a "cross-complaint" against Hulbert does not plausibly support his contention that the University shielded Hulbert from disciplinary action based on her gender.  Instead, the record indicates that the University informed Routh that he could file a complaint against Hulbert, though it would not be handled as part of the same proceeding initiated by her complaint. *See*, Docket No. [#9-10] at p. 2.  There is no indication that Routh availed himself of that opportunity.  Consequently, to the extent that the pleading implies that Routh was denied recourse against Hulbert, which it clearly does, it is contradicted by the actual record.   Moreover, the fact that the University required any complaint by Routh to be handled in a separate proceeding is not evidence of discriminatory animus.  In any event, Routh was permitted to introduce evidence at the hearing to rebut Hulbert's accusations, and he did so.  Consequently, he was not prejudiced in any way.

The pleading does not allege that any similarly-situated female was permitted to file a cross-complaint at any time.  The pleading also does not plausibly plead facts

---

[17]The pleading also alleges, as part of the Title IX claim, that there were procedural defects (lack of notice) in the disciplinary proceeding. *See*, Docket No. [#34-2] at ¶ ¶ 92-93.  However, the Court has already addressed  those same alleged procedural flaws.  To the extent that Routh believes that the alleged lack of notice evinces an intent to discriminate against him based on gender, the Court disagrees, even assuming that he was denied adequate notice, which he was not.

suggesting that the University ever received a complaint against a female student comparable to that filed against Routh by Hulbert, and treated the female student more favorably.  For all of these reasons, the proposed pleading fails to state an actionable claim under Title IX.

Defamation

With regard to claims for defamation, which includes libel and slander, "[t]o state a claim for defamation under New York Law, the plaintiff must allege (1) a false statement about the plaintiff; (2) published to a third party without authorization or privilege; (3) through fault amounting to at least negligence on part of the publisher; (4) that either constitutes defamation *per se* or caused 'special damages.'" *Gargiulo v. Forster & Garbus Esqs.*, 651 F.Supp.2d 188, 192 (S.D.N.Y. 2009) (citations omitted). The defamatory statements must be pleaded with some particularity.  *See*, CPLR § 3016(a) ("In an action for libel or slander, the particular words complained of shall be set forth in the complaint, but their application to the plaintiff may be stated generally."). A statement falsely accusing someone of rape is defamation *per se. See, TC v. Valley Cent. School Dist.*, 777 F.Supp.2d 577, 603 (S.D.N.Y. 2011) ("'According to the Restatement of Torts, the crimes recognized within *per se* defamation are murder, burglary, larceny, arson, rape and kidnapping.' Restatement (Second) of Torts § 571, cmt. g (1977); *see also Liberman* [*v. Gelstein*], 80 N.Y.2d [429,]435, 590 N.Y.S.2d 857 [(1992)].").

Hulbert maintains that the defamation claim must be dismissed, since according to Routh, the University did not believe her accusations:

> [The pleading] repeatedly allege[s] that [the University] did not believe that
> Routh had sexually assaulted Hulbert.  Instead, [the University] allegedly
> expelled Routh because it disapproved of his *consensual* sexual activities
> with Hulbert.  Routh's own allegations establish that Hulbert's allegedly
> false accusations of sexual assault did not injure him, which requires
> dismissal of his defamation claim.

Hulbert's Memo [#35] at p. 3 (emphasis in original).  Hulbert therefore contends that

Routh cannot have suffered any damages from her alleged defamatory statements.  As

support for the idea that the University did not believe her allegations of sexual assault,

Hulbert cites the following paragraphs of Routh's original complaint: 10, 23, 26, 28-33,

61-62.[18]  However, those paragraphs refer to allegations concerning the University's

finding that Routh violated Principle 5(a), disorderly conduct.  Other allegations in that

pleading refer to Principle 12, "sexual misconduct or assault," and indicate that the

University found that Routh had sex with Hulbert in a situation in which she could not

consent.  Specifically, paragraph 26 of the original complaint states:

> At the conclusion of the disciplinary proceedings, Dylan Routh was found
> to have violated Principle of Student Conduct 12 based on muffling and/or
> gagging of Sarah Hulbert during their consensual sexual conduct,
> *because that muffling and/or gagging rendered Sarah Hulbert*
> *momentarily unable to give consent*.

(emphasis added).  The reasonable inference of that statement is that the University

found that the sex acts while Hulbert was gagged were not truly consensual.  The Court

has reviewed the Proposed Amended Complaint [#34-2] and finds that it does not

necessarily indicate that the University disbelieved Hulbert.  If the University did not

---

[18]Hulbert also cites to the following paragraphs of the "First Amended Complaint," apparently meaning docket no. [#18]: 16, 26, 28, 33, 36, 53, 73, 94, 98-105, and 107.  However, as noted earlier, Routh has withdrawn docket no. [#18] and has replaced it with docket no. [#34-2].

believe her accusations, as Hulbert suggests, it seems that it would not have found Routh guilty of violating Principle 12, and might only have found him guilty of violating Principle 5(a).  To the extent that the proposed pleading [#34-2] alleges that Routh was expelled in part for violating Principle 12 based on Hulbert's false accusations, it pleads that he suffered damages from the alleged defamation.  Accordingly, Hulbert's motion to dismiss the defamation claim based on Routh's alleged failure to plead damages is denied.

Alternatively, Hulbert maintains that the defamation claim against her is barred by the "common interest privilege."  The law concerning this privilege is well-settled in New York:

> Under the principle that the flow of information between persons sharing a common interest should not be impeded, a qualified "common interest" privilege arises when a person makes a good-faith, bona fide communication upon a subject in which he or she has an interest, or a legal, moral or societal interest to speak, and the communication is made to a person with a corresponding interest.  Qualified privilege has been applied to statements among employees of an organization in furtherance of the common interest of their employer.

> In order to overcome the qualified privilege, a plaintiff must demonstrate by tender of proof in evidentiary form that a defendant acted with malice. To demonstrate what has become known as constitutional malice, [a] plaintiff must show that [the defendant] acted with knowledge that her statements were false or with reckless disregard of whether they were false, *i.e.*, that the statements were made with a high degree of awareness of their probable falsity or that [the defendant] entertained serious doubts as to their truth. Common-law malice, which will also defeat a qualified privilege, requires proof that the speaker was motivated solely by spite or ill will.

*Sanderson v. Bellevue Maternity Hosp. Inc.*, 259 A.D.2d 888, 889-890, 686 N.Y.S.2d 535, 537 (3d Dept. 1999) (citations and internal quotation marks omitted).

The common interest privilege is an affirmative defense." *See, Demas v. Levitsky*, 291 A.D.2d 653, 661, 738 N.Y.S.2d 402, 410 (3d Dept. 2002) ("Because the 'common interest' privilege constitutes an affirmative defense . . . it does not lend itself to a preanswer motion to dismiss pursuant to CPLR 3211(a)."), *leave to appeal dismissed,* 98 N.Y.2d 728, 749 N.Y.S.2d 477 (2002) (table).   "[When] affirmative defense[s] . . . require[ ] consideration of facts outside of the complaint [they are] inappropriate to resolve on a motion to dismiss. Affirmative defenses may be adjudicated at this stage in the litigation, however, where the facts necessary to establish the defense are evident on the face of the complaint." *Kelly-Brown v. Winfrey*, 717 F.3d 295, 308 (2d Cir. 2013).

In the instant case, the face of the complaint does not indicate that Hulbert is entitled to the common interest privilege.  To the contrary, the pleading contends that Hulbert made false accusations against Routh, with knowledge of their falsity, because she was angry at him for ending their relationship three days earlier.  The establishment of such facts would defeat the common interest privilege.[19]  Accordingly, Hulbert's motion to dismiss the defamation claim based on the common interest privilege is also denied.

---

[19]Hulbert argues that Routh cannot establish "malice" since there "was clearly *some* factual basis" to her complaints against him. See Docket No. [#35] at p. 7 (emphasis in original) (*citing Campanella v. County of Monroe*, 853 F.Supp.2d 364, 372-373 (W.D.N.Y. 2012) ("*Campanella*").  However, *Campanella* is factually inapposite.  Moreover, Routh is not alleging that *all* of Hulbert's statements about their sexual relationship were defamatory, but rather, he is complaining specifically about her statements alleging that he had sex with her against her will on several occasions.  Routh does not admit that there is any factual basis to those allegations.

Intentional Infliction of Emotional Distress

The law in New York State concerning claims for IIED is well-settled: "[I]n a cause of action for intentional infliction of emotional distress, a plaintiff must plead and prove four elements: (1) extreme and outrageous conduct; (2) the intentional or reckless nature of such conduct; (3) a causal relationship between the conduct and the resulting injury; and (4) severe emotional distress." *Mitchell v. Giambruno*,  35 A.D.3d 1040, 1041, 826 N.Y.S.2d 788, 789 (3rd Dept. 2006) (citations omitted).  Defamatory statements are generally not sufficiently extreme and outrageous to support an IIED claim.  In *James v. DeGrandis*, 138 F.Supp.2d 402 (W.D.N.Y. 2001), the defendants widely disseminated false statements about a college soccer coach, accusing him of having improper sexual relationships with students, in order to have him fired from his coaching position, and to prevent him from being hired elsewhere.  The court dismissed the IIED claim, stating that, "[e]ven a false charge of sexual harassment does not rise to the level of outrage required to recover on an intentional infliction of emotional distress claim under New York law." *Id*., 138 F.Supp.2d at 421 (citation omitted).  Similarly, false accusations of criminal conduct generally do not rise to the level of extreme and outrageous conduct that is necessary to support an IIED claim.  In *La Duke v. Lyons*, 250 A.D.2d 969, 673 N.Y.S.2d 240 (3d Dept. 1998), the plaintiff nurse was terminated from her employment at a hospital, after being accused by co-workers of euthanizing a patient.  The Appellate Division, Third Department, affirmed the dismissal of an IIED cause of action, stating: "[E]ven assuming the truth of the allegation that the employees intentionally relayed false information to the hospital, the conduct was not sufficiently

46

outrageous to state a cause of action for intentional infliction of emotional distress." *Id.*,

250 A.D.2d at 973, 673 N.Y.S.2d at 244 (citation omitted); *Rivers v. Towers, Perrin,*

*Forster & Crosby, Inc.*, Civil Action No. CV-07-5441 (DGT)(RML), 2009 WL 817852 at

*8 (E.D.N.Y. Mar. 27, 2009) (Employer falsely informing police that Plaintiff had stolen

laptop computers was not sufficiently outrageous to support an IIED claim).

     In the case at bar, Hulbert accused Routh of committing a number of acts of

sexual abuse and violence against her, in the context of an ongoing sexual relationship

in which many sexual acts, including some involving violence, were admittedly

consensual at various times.  Routh admits that much of the complained-of conduct

actually occurred, though he maintains that all of it was consensual, while Hulbert

maintains that some of it was not.  Routh further admits that some of the sexual activity

took place while Hulbert was "gagged/muffled," which would have temporarily prevented

her from objecting to specific acts while they were occurring.  Even assuming, as Routh

maintains, that Hulbert's accusations concerning specific incidents of violence and non-

consensual sex are false, and that she made them solely because she was angry at

him for ending their relationship, the Court finds under the circumstances that such

false accusations are insufficiently extreme and outrageous to establish an IIED claim

under New York law.  Accordingly, Routh's IIED claim against Hulbert is dismissed.[20]

---

[20]Although Routh has withdrawn his IIED claim against the University, the Court observes that such claim would lack merit in any event. *See, Fellheimer v. Middlebury College*, 869 F.Supp. 238, 247 (D.Vt. 1994) ("A college's decision, when confronted with a female student's accusation of rape, to confront the male student with the charges, hold a hearing, and support the findings of the initial tribunal on appeal, even where various procedural errors are alleged, cannot form the basis of an IIED claim."); *Fraad-Wolff v. Vassar College*, 932 F.Supp. 88, 93-94 (S.D.N.Y. 1996) (College's handling of investigation and hearing of sexual harassment charges against student did not support an IIED claim.)

Hulbert's Rule 11 Motions

Hulbert has filed two motions [#15][#23] for sanctions under Rule 11(c)(2) and 28 U.S.C. § 1927.  The first motion [#15] is against Manes, who is no longer a party to this action, seeks sanctions and attorney's fees.   This motion seeks to sanction Manes for asserting two frivolous claims - the claim that Routh and Hulbert entered into a contract for sexual relations, and the claim by Manes for NIED.  The motion also seeks to sanction Manes on the grounds that she brought the action for an improper purpose, which was to harass Hulbert by including "lurid" allegations about her in the complaint. The second motion [#23] seeks sanctions against Manes and Routh based on their threat to include additional sexual details in an amended pleading if Defendants did not agree to mediation, and on the eventual inclusion of such details in the proposed amended pleading [#18].  Notably, that proposed pleading omitted the claims which Hulbert's first motion for sanctions [#15] had indicated were frivolous.

As mentioned above, there is merit to Hulbert's contention that Routh and Manes were disingenuous in indicating that they included additional sexual details in response to Defendants' contentions that the Complaint lacked detail.  As already discussed, neither defendant had indicated that the pleading was deficient due to a lack of detail concerning the alleged sexual activity.  Therefore, there was no need for Routh and Manes to include such detail.  On the other hand, the very nature of this action regrettably requires some discussion of Routh and Hulbert's sexual activity.  Moreover, some of the most strenuously objected-to detail, such as some of that found in ¶ 18 of the Complaint [#1], was arguably relevant to understanding why and when Routh allegedly terminated his relationship with Hulbert, in connection with his claim of

retaliation.  Additionally, while Hulbert maintains that Routh and Mane's claims are frivolous and are being asserted only to harass her, the Court has found that Routh's defamation claim may proceed.

Considering all of these factors, the Court "cannot say that [Manes and Routh's] conduct meets the stringent requirements set forth in the case law for the imposition of sanctions." *Wright v. Brae Burn Country Club, Inc.*, No. 08 Civ. 3172(DC), 2009 WL 725012 at *6 (S.D.N.Y. Mar. 20, 2009) (denying motion for sanctions where plaintiff asserted baseless claims and sent inappropriate communications to opposing counsel; collecting Second Circuit Court of Appeals cases illustrating the difficulty in meeting the "objective unreasonableness" standard required for the imposition of Rule 11 sanctions); *see also, Revson v. Cinque & Cinque, P.C.*, 221 F.3d 71, 79 (2d Cir. 2000) (To impose sanctions under 28 U.S.C. § 1927, "the trial court must find clear evidence that (1) the offending party's claims were entirely meritless and (2) the party acted for improper purposes.") (citation omitted).   Consequently, Hulbert's applications for sanctions [#15][#23] are denied.

<u>Motion to Seal</u>

Hulbert has also filed a motion [#12] to seal the complaint in this action, "pursuant to Local Rule of Civil Procedure 5.3(b)."  Specifically referring to paragraph 18 of the original Complaint [#1], which refers to sexual activity involving "needles and knives," Hulbert stated that Plaintiffs had made "lurid allegations about [her], apparently for the sole purpose of humiliating her.  The allegations have no bearing on the merits and the Court should exercise its discretion and place them under seal to protect Hulbert from plaintiffs' harassment." Docket No. [#12-1] at p. 3.  Hulbert later made

49

similar complaints regarding Routh and Manes' First Proposed Amended Complaint [#18], which contained additional graphic sexual details. *See*, Docket No. [#21] at ¶ 8. Specifically, the Proposed Amended Complaint [#18] repeated the allegations contained in paragraph 18 of the Original Complaint [#1], and quoted an alleged text message in which Hulbert described certain specific sexual activities that she wanted to try with Routh, one of which involved her being on the floor, handcuffed and blindfolded. Hulbert reiterated her belief that Routh had included such details "solely to harass [her]." Docket No. [#21] at ¶ 20.

The applicable principles concerning the sealing of judicial documents are well settled:

> The common law right of public access to judicial documents is firmly rooted in our nation's history . . .  [and] is based on the need for federal courts, although independent — indeed, particularly because they are independent—to have a measure of accountability and for the public to have confidence in the administration of justice.
>
> ***
>
> In order to be designated a judicial document, the item filed must be relevant to the performance of the judicial function and useful in the judicial process.
>
> ***
>
> Once the court has determined that the documents are judicial documents and that therefore a common law presumption of access attaches, it must determine the weight of that presumption. The weight to be given the presumption of access must be governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts.
>
> Finally, after determining the weight of the presumption of access, the court must balance competing considerations against it.  Such countervailing factors include but are not limited to the danger of impairing

law enforcement or judicial efficiency and the privacy interests of those resisting disclosure.

In addition to the common law right of access, it is well established that the public and the press have a qualified First Amendment right to attend judicial proceedings and to access certain judicial documents.  We have articulated two different approaches for determining whether the public and the press should receive First Amendment protection in their attempts to access certain judicial documents.  The so-called "experience and logic" approach requires the court to consider both whether the documents have historically been open to the press and general public and whether public access plays a significant positive role in the functioning of the particular process in question.  The courts that have undertaken this type of inquiry have generally invoked the common law right of access to judicial documents in support of finding a history of openness.  The second approach considers the extent to which the judicial documents are derived from or are a necessary corollary of the capacity to attend the relevant proceedings.

A court's conclusion that a qualified First Amendment right of access to certain judicial documents exists does not end the inquiry. Documents may be sealed if specific, on the record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest.  Broad and general findings by the trial court, however, are not sufficient to justify closure.

*Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006) (citations, footnotes and internal quotation marks omitted).

Having considered the factors set forth above, the Court finds that Hulbert's request to seal must be denied.  In that regard, the Court determines that Hulbert has not made the difficult showing that would entitle her to the relief she seeks.  Moreover, although the information that is the subject of the application is embarrassing, it is arguably relevant to Routh's contention that his and Hulbert's sexual activity, some of

which was seemingly abusive and potentially harmful, was consensual.  The application to seal [#12] is denied.

## CONCLUSION

The applications are granted in part and denied in part as follows: Routh's motion to amend [#19] is denied as withdrawn; Routh's motion to amend [#34] is granted as to his defamation claim against Hulbert, but is otherwise denied as futile; the University's motion to dismiss [#9] is granted in its entirety, and the University is dismissed from the action; Hulbert's motion to dismiss [#12] is denied as to the defamation claim against her, but is otherwise granted; Hulbert's motions for sanctions [#15] [#23] are denied; and Hulbert's motion to seal [#12] is denied.  The sole remaining claim is Routh's defamation claim against Hulbert.  All other claims are dismissed with prejudice, except the Article 78 claim which is dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(4).  By separate order the Court will refer this action to a United States Magistrate Judge for the handling of discovery and other pretrial matters.

SO ORDERED.

Dated:        November 5, 2013
              Rochester, New York

                                        /s/ Charles J. Siragusa
                                        CHARLES J. SIRAGUSA
                                        United States District Judge