UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

DYLAN ROUTH,

                Plaintiff,            **AMENDED COMPLAINT**

      vs.

                                          6:11-CV-6606-CJS

SARAH HULBERT,

                Defendant.

Plaintiff, Dylan Routh (hereafter "Mr. Routh" or "Plaintiff"), by and through his attorney, Jeffrey Wicks, PLLC, as and for his Complaint against the defendant, alleges as follows:

## **PARTIES**

1.     Plaintiff, Dylan Routh, is a citizen of the State of Oregon.

2.     Defendant Sarah Hulbert (hereafter "Defendant Hulbert") is a citizen of the State of New York.

## **JURISDICTION AND VENUE**

3.     This Court has original jurisdiction pursuant to 28 U.S.C. section 1332(a)(1) since there is complete diversity among the parties and the amount in controversy exceeds $75,000.00.

4.     This action has been commenced within all applicable statutes of limitations.

5.     Venue in the Western District of New York is proper, pursuant to 28 U.S.C. section 1391, since the defendant is a resident of the State of New York

and the Western District of the State of New York.

## FACTS

### A. The Routh-Hulbert Relationship

6. At all times relevant herein, Mr. Routh was an undergraduate student at the University of Rochester, located in Rochester, New York, having commenced his studies there in September, 2008.

7. At all times relevant herein, the Defendant Hulbert was an undergraduate student at the University, also having commenced her studies there in September, 2008.

8. In October, 2008, Mr. Routh met the Defendant Hulbert.

9. For the approximately three years between October, 2008 and September, 2011, Mr. Routh and the Defendant Hulbert maintained a personal relationship which, at times, included consensual sexual activity.

10. At no time during this relationship with the Defendant Hulbert did Mr. Routh engage in any activities with the Defendant Hulbert to which the Defendant Hulbert objected and/or did not give her consent.

11. At all times relevant herein, both Mr. Routh and the Defendant Hulbert were over the age of eighteen.

12. Upon information and belief, at all times relevant herein the Defendant Hulbert was under no disability which could have affected her capacity to enter into their relationship or engage in the activities described herein.

13. In September, 2011, the Defendant Hulbert sent Mr. Routh a number of text messages indicating her desire to continue their relationship, including sexual

activity.

14. In response, on or about September 16, 2011, Mr. Routh advised the Defendant Hulbert that he did not wish to continue their relationship.

### B. The Defendant Hulbert Complains to the University and Disciplinary Charges are Brought Against Mr. Routh

15. On or about September 19, 2011, three days after Mr. Routh advised the Defendant Hulbert that he did not wish to continue their relationship, the Defendant Hulbert made a complaint to employees of the University of Rochester that between September, 2010 and April/May 2011, Mr. Routh had engaged in sexual conduct with her against her consent and had otherwise assaulted her.

16. Specifically, on September 19, 2011, at approximately 4:30 p.m. at the Wilson Commons on the University campus, the Defendant Hulbert told University Security Investigator T. W. Belcher and Investigator Willman that Mr. Routh "sexually and physically abused" her and had "forcible intercourse" with her over the course of the previous year.

17. In addition, the Defendant Hulbert submitted a five-page written statement to the University in which she made detailed allegations against Mr. Routh.

18. Based upon the allegations made to Inv. Belcher and Inv. Willman by the Defendant Hulbert, the investigators concluded that the following criminal charges could be brought against Mr. Routh: Strangulation in the Second Degree (N.Y. Penal Law section 121.12 [ a Class D Felony]), Rape in the First Degree (N.Y. Penal Law section 130.35 [a Class B Felony]), Aggravated Sexual Abuse in the First Degree (N.Y. Penal Law section 130.70 [a Class B Felony]), Unlawful

Imprisonment in the First Degree (N.Y. Penal Law section 135.10 [a Class E Felony]) and Reckless Endangerment in the First Degree (N.Y. Penal Law section 120.25 [a Class D Felony]).

19. As a result of the complaint made by the Defendant Hulbert, on September 20, 2011 Mr. Routh was summarily suspended from the University and ordered off the campus by Assistant Dean of Students Morgan Levy.

20. Mr. Routh was immediately escorted from the University campus by University Security personnel and advised that his future presence on campus would constitute criminal trespass.

21. In addition, Mr. Routh was ordered to avoid all contact with the Defendant Hulbert by Assistant Dean Levy.

22. By a letter dated September 22, 2011, Assistant Dean Levy advised Mr. Routh that he was being charged by the University with violating the Standards of Student Conduct, Section VI, specifically items 5(a) (disorderly conduct), 11 (sexual harassment) and 12 (sexual misconduct or assault, including any form of unwanted sexual conduct), all allegedly occurring between September, 2010 and September, 2011.

### C. The Disciplinary Hearing

23. A disciplinary hearing with respect to the foregoing charges was conducted on September 29, 2011 before a panel of three University administrators: Joellen Kuhl, Assistant Finance and Operations Officer, Stephanie Beetle, Senior Student Advisor and Chris Apple, Men's Soccer Head Coach.

24. Both Mr. Routh and the Defendant Hulbert testified at the disciplinary

hearing and provided written statements.

25.  The written statement previously made by the Defendant Hulbert was published to the members of the administrative hearing board.

### i. The Defendant Hulbert's Written Statment

26.  The following statements contained in the Defendant Hulbert's written statement are false:

> Paragraph 1: The Defendant Hulbert's allegations that in mid-September, 2010, Mr. Routh continued to have anal sex with her after she used the pre-arranged safety word, or that in the other instances described in the statement he continued to engage in the activities described by the Defendant Hulbert after she used the agreed-upon "safety phrase".
>
> Paragraph 2: That in November, 2010, Mr. Routh left the Defendant Hulbert handcuffed overnight before his return and thereafter for an additional three hours.
>
> Paragraph 3: The Defendant Hulbert's allegations that the activities alleged therein were conducted without her consent, the he physically prevented the Defendant Hulbert from leaving the shower until he had ejaculated or that he forced her to swallow his urine.
>
> Paragraph 4: That in November, 2010, Mr. Routh raped her, forced her legs apart or forced a bubble wand into her anus after being told to stop by the Defendant Hulbert.
>
> Paragraph 5: The Defendant Hulbert's allegations that "I woke up to him being on top of me, with his crotch in my face. I tried to push him away, but he kept forcing himself on me and wouldn't stop. He then forced me to roll over and I was facedown on my bed, with my face in the comforter. He got on top of me and he kept trying to lift up my skirt from behind to have anal sex with me. I kept telling him to stop and I kept trying to escape, but he just sat on top of me harder and he hit me and left two large bruises on my upper leg. There were also bruises on my ass. I just remember panicking and becoming very, very upset. I remember feeling like I was going to pass out, because he was pressing my face down into the comforter and trying to force me to have anal sex with him. I was kicking him while I was wearing high heels,

and I was trying to hit him as hard as I could. I finally managed to get out from under him, but I don't know how I did it. I remember him getting up, and asking me if I was going to have sex with him or not. I said no, and he opened the door and threw me out into the hallway."

Paragraph 6: The Defendant Hulbert's allegations that Mr. Routh put underwear in the Defendant Hulbert's mouth, duct-taped her mouth shut and duct-taped her hair, put a bandana around her eyes, tied her legs together and handcuffed her hands behind her back, all without her consent, that she "freaked out", ripped the duct tape off her mouth and hair and told Mr. Routh to get out.

Paragraph 7: The Defendant Hulbert's allegations that Mr. Routh duct-taped her legs closed, put duct-tape around her mouth/head and handcuffed her arms behind her back without her consent, that she asked Mr. Routh to uncuff her and that he refused to uncuff her.

Paragraph 9: The Defendant Hulbert's allegations that Mr. Routh whipped her with a belt multiple times without her consent.

Paragraph 10: The Defendant Hulbert's allegations that "Dylan has used an electrical cord to whip my back and has left lashes on my back."

Paragraph 11: " Dylan has used a lighter to burn my nipples" and the Defendant Hulbert's allegations that Mr. Routh poured hot wax on her without her consent.

Paragraph 12: The Defendant Hulbert's allegations that Mr. Routh struck her without her consent.

Paragraph 13: The Defendant Hulbert's allegations that Mr. Routh left her handcuffed for three hours alone in her room.

Paragraph 14: The Defendant Hulbert's allegations that Mr. Routh would strike her if she spoke "out of turn".

Paragraph 15: The Defendant Hulbert's allegations that the activities alleged therein were conducted without her consent.

Paragraph 16: "Dylan would bite my chest until I would bleed or be bruised if I didn't do what he wanted".

Paragraph 17: "Dylan has told me in the past that he has pictures

of me naked and has saved them in case he ever needed to blackmail me".

Paragraph 18: "[Mr. Routh] Ejaculated inside of me during sexual intercourse even when I explicitly told him not to."

Paragraph 19: The Defendant Hulbert's allegations that Mr. Routh would hurt her if she did not do what he wanted or that Mr. Routh did not tell the Defendant Hulbert that he had a staph infection.

Paragraph 20: That Mr. Routh had not showered after having sex with someone else and subsequently had sex with the Defendant Hulbert.

### ii. The Defendant Hulbert's Oral Statement

27. In addition, the oral testimony given by the Defendant Hulbert to the administrative hearing board was false.

28. Specifically, the Defendant Hulbert gave false oral testimony at the disciplinary hearing. A review of the recording of that proceeding reveals that in her testimony she falsely stated that, *inter alia*, Mr. Routh raped her, sexually and otherwise assaulted her and/or engaged in activities with her without her consent, including but not limited to the following statements (with time references to reflect the approximate time when such testimony was given:

- That Mr. Routh forced the Defendant Hulbert to continue to have oral sex with him and forced her to have anal sex with her after she had supposedly used the "safe word." (Part 1, 59:36-1:00:40)

- That Mr. Routh forced her to clean off his penis with her mouth by threatening her. (1:00:50-1:01:09)

- That Mr. Routh refused to remove the handcuffs from the Defendant Hulbert and left her naked and handcuffed overnight, and for three hours the following day. (1:01:10-1:02:10)

- That Mr. Routh forced the Defendant Hulbert to have anal sex with him or refused to remove the handcuffs or tape upon her request, that he refused to loosen the belt, that he burned her with water

without her consent, that he blocked her exit from the shower or forced her to swallow liquid. (1:02:13- 1:04:25)

- That Mr. Routh continued to insert a "bubble wand" in the Defendant Hulbert's rectum after being instructed to remove it or that Mr. Routh raped the Defendant Hulbert. (1:04:25-1:04:45)

- That, without her consent, Mr. Routh put underwear in the Defendant Hulbert's mouth, duct-taped her mouth shut, put a bandana around her eyes, tied her legs together and handcuffed her hands behind her back. (1:05:03-1:05:33)

- That Mr. Routh told the Defendant Hulbert to perform oral sex upon him after he had had anal intercourse with another female and had not showered thereafter. (1:06:03-1:06:18)

- That Mr. Routh forced the Defendant to have anal sex with him, that she struggled to get free from him and/or that he threw her in the hallway.
(1:06:29-1:08:31)

- That Mr. Routh whipped the Defendant with an electrical cord, burned her with a lighter or engaged in sexual activities without her consent. (1:08:31-1:09:09)

- That Mr. Routh threatened to blackmail the Defendant Hulbert with naked pictures of her or that he threatened her to get her to lick his anus. (1:10:19-1:10:33)

- That Mr. Routh continued to engage in sexual activity with the Defendant Hulbert after the Defendant Hulbert used the "safety word", indicating that he should stop. (1:15:14-1:15:20)

- That Mr. Routh threatened the Defendant Hulbert to have sex with him, that he had sex with her without her consent and/or that he continued to engage in sexual activity with her once she used the "safety word". (1:15:49-1:16:03)

- That Mr. Routh raped the Defendant Hulbert. (1:17:55-117:57)
That Mr. Routh left the Defendant Hulbert alone handcuffed and duct-taped without her consent. (1:18:27-1:18:35)

- That Mr. Routh engaged in sexual conduct with the Defendant Hulbert without her consent, threatened her and/or committed sexual assault upon her. (Part 2, 57:40-59:24)

29. Mr. Routh, both in oral statements and written submissions advised the administrative hearing board that that he denied committing any acts with the Defendant Hulbert which would constitute a violation of the University's disciplinary rules and, specifically, denied having any non-consensual interactions with the Defendant Hulbert.

### D. The Expulsion of Mr. Routh

30. By a letter, dated September 30, 2011, Assistant Dean Levy advised Mr. Routh that the administrative hearing board found Mr. Routh responsible for having engaged in conduct constituting violations of the University's Standards of Student Conduct, Section VI, specifically items 5(a) and 12.

31. Based upon this finding in the aforementioned letter, Dean Levy imposed a penalty of expulsion from the University.

32. Mr. Routh appealed this determination to Peter Lennie, Senior Vice President and Dean of College Faculty.

33. On December 2, 2011, Dean Lennie upheld Dean Levy's decision to expel Mr. Routh from the University.

### E. The Criminal Charges Against Mr. Routh

34. Upon information and belief, based upon a complaint made by the Defendant Hulbert to law enforcement officials with respect to the conduct described at paragraphs 26 and 28, above, felony charges against Mr. Routh were submitted to a Monroe County Grand Jury by the Monroe County District Attorney's Office.

35. Following testimony from both Mr. Routh and the Defendant Hulbert, the

Monroe County Grand Jury returned a "no bill" of indictment against Mr. Routh, signifying that there were not reasonable grounds to believe that he had committed any of the offenses submitted to the Grand Jury.

36. The false statements of the Defendant Hulbert have caused Mr. Routh to be expelled from the University of Rochester, embarrassment, humiliation, mental anguish and monetary damages.

37. In addition, Mr. Routh was required to expend money to retain an attorney with respect to the proposed criminal charges brought by the Defendant Hulbert which were ultimately dismissed by the Grand Jury.

### AS AND FOR A CAUSE OF ACTION
### AGAINST THE DEFENDANT HULBERT
### FOR DEFAMATION

38. Plaintiff repeats and realleges paragraphs 1 through 37 as if set forth fully herein.

39. The statements recited in paragraphs 16, 17, 26 and 28, above, were false, were made with the knowledge of their falsity or with reckless disregard for the truth or falsity thereof.

40. The statements recited in paragraphs 16, 17, 26 and 28 were slanderous and libelous *per se* since they allege the commission of a number of serious crimes, as evidenced by the statements of the University Security officers and the submission of proposed felony charges to the Monroe County Grand Jury.

41. As a result of the defamatory statements made by the Defendant Hulbert, Mr. Routh has sustained damages including, but not limited to, expulsion from the

University of Rochester, loss of tuition, the inability to complete his undergraduate education, loss of future income, humiliation, embarrassment and mental anguish.

WHEREFORE, Plaintiff Dylan Routh, demands judgment against the Defendant as follows:

A.  On the First Cause of Action, in favor of Plaintiff in the amount of Two Million Dollars ($2,000,000.00);

B.  Punitive damages in the amount of Two Million Dollars ($2,000,000.00);

C.  That Plaintiff be awarded the costs and disbursements of this action; and

D.  For such other and further relief as to this Court may seem just and proper.

**PLEASE NOTE: PLAINTIFF HEREBY DEMANDS TRIAL BY JURY**

Dated: March 3, 2014

_____
Jeffrey Wicks, PLLC
Charles D. Steinman, Esq., of Counsel
*Attorneys for Plaintiff*
36 West Main Street, Suite 101
Rochester, New York 14614
Tel: 585.325.6070
Fax: 585.325.6082
Email: wickslaw@rochester.rr.com